IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-432-CR





THERMON MAURICE SKILLERN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0911666, HONORABLE BOB JONES, JUDGE PRESIDING



 





 This appeal is taken from a conviction for the second-degree felony offense of theft
of property having an aggregate value of $20,000 or more. (1) Act of May 27, 1985, 69th Leg.
R.S., ch. 599, § 1, 1985 Tex. Gen. Laws 2244, 2245 (Tex. Penal Code Ann. § 31.03(a),
(e)(5)(B), since amended); Tex. Penal Code Ann. § 31.09 (West 1994). Appellant Thermon
Maurice Skillern was tried separately from his co-defendants because of his prior conviction. The
jury found appellant guilty, and the trial court, finding the enhancement paragraph allegations to
be true, assessed punishment at twenty-five years' confinement.

 Appellant's counsel on appeal advances sixteen points of error and belatedly urges
a seventeenth point. Appellant first complains that the trial court erred in overruling his motion
to quash the indictment because the face of the instrument showed that venue was in Harris
County without allegations of justification for trying the case in Travis County. Appellant next
challenges the constitutionality of Senate Bill 1685 of the 71st Legislature adding certain articles
to the Texas Insurance Code because the bill contained more than one subject. Tex. Const. art.
III, § 35(a). In two other points, appellant attacks the venue provisions of Senate Bill 1685,
alleging violations of the ex post facto principles of the federal and state constitutions. Four
points of error address evidentiary rulings by the trial court. Another five points attack the trial
court's charge to the jury. Three other points challenge the sufficiency of the evidence to sustain
the conviction. Lastly, appellant urges consideration of a supplemental point of error claiming
that a prior conviction alleged and used for enhancement of punishment was void as a matter of
law. We will affirm the conviction.



BACKGROUND


 The facts of this complex white-collar theft case found in this voluminous 2,000
page record are not easily summarized. We shall set forth such facts as are necessary to place the
points of error in proper perspective. Other facts will appear in the discussion of the various
points of error.

 Greed is the name of the scenario. Few actors appeared on stage with clean hands. 
Many even had dirt under their fingernails. We view the evidence in the light most favorable to
the jury's verdict. Appellant and a co-defendant, Louis Harris, president of American Teachers
Life Insurance Company, caused the insurance company to issue approximately 131 single-premium immediate annuities each with a face value of $100,000 without the annuities being
funded. Seventy-five of these annuities later become important to the facts of the instant case. 
When an insurance company issues a single-premium immediate annuity, the total premium is
collected upon issuance, and the insurance company assumes a corresponding liability on its
books. Such an annuity constitutes a representation on the part of the insurance company that it
has received $100,000 from the annuity holder. 

 The evidence credits appellant with the plan to issue the unfunded annuities, which
were designed to enhance the financial standing of the insurance company. Appellant "sold" or
had his associates "sell" these annuities to friends, relatives, and employees of the insurance
company without collecting any premiums. Each annuitant was led to believe that he or she
would receive a $100,000 retirement fund without cost and an additional free life insurance
policy. No money exchanged hands during these transactions. Each annuitant signed a $90,000
promissory note to appellant's corporation, General Mercantile Finance Company. (2) This left the
impression that each annuitant had paid $10,000 in cash and borrowed $90,000 from appellant's
finance company. Under the terms of the promissory note, each annuitant pledged the $100,000
annuity as collateral for indebtedness to the finance company. Each annuitant also signed a second
promissory note to cover the cost of the additional life insurance policy. The annuitants were led
to believe that somehow the first promissory notes would be sold and the interest earned would
be used to make all necessary payments on the notes without any cost to them.

 Then, from the wings, co-defendant Ray Rankin approached center stage. As
president of Energy Impact Company, Rankin was eager to improve the financial standing of his
company. He knew of appellant's plan, and he was acquainted with Bruce McLain, president of
Premier Bank, whom he knew was seeking greater capitalization for the bank. Here the plot
thickens. Rankin conferred with McLain and introduced him to appellant. Eventually over a
period of time, Premier Bank purchased at a discount 75 of the first promissory notes secured by
the annuities. The bank officials reasoned that the annuities were good collateral because they
could not have been issued without complete funding and were redeemable upon demand. 
Specific assurances were given to the bank officials that the annuities had been funded. Appellant
never informed the bank officers that the annuities were not funded.

 Premier Bank paid a total of $5,175,000 for the notes. Appellant received income
producing real property worth $2,100,000 as partial payment. The deeds named Gulf States
Corporation, one of appellant's companies as grantees. The bank paid the balance in cash to the
General Mercantile Finance Company, which paid $2,000,000 to Energy Impact, which in turn
sent $2,000,000 back to Premier Bank in exchange for personal promissory notes from McLain
and some members of the bank's board of directors enabling them to purchase bank stock and aid
the bank in its recapitalization. Like the United States cavalry, the federal bank examiners arrived
on stage near the end of the melodrama, viewing with disdain the evil they uncovered. The bank
examiners found that the annuities had never been funded and so informed McLain. The State
Board of Insurance was also advised. It began its own investigation of the insurance company. 
The sound of the feet moving across the stage became deafening.

 Appellant met with Rankin and McLain. In an effort to cover the missing
premiums, appellant wrote approximately fourteen million dollars in checks drawn on his General
Mercantile Finance Company account payable to American Teachers Life Insurance Company. 
Appellant did not have the funds to cover these checks. They were never negotiated. However,
Louis Harris, co-defendant and president of the insurance company, endorsed the checks over to
the Madison County Land Company, another of appellant's companies. In return, appellant had
the land company give the insurance company 104 first lien mortgage loan notes on nonexistent
greenhouses (referred to as "growth chambers") in Madison County. These worthless notes were
listed as assets on the insurance company books at face value. The examiners quickly determined
that these notes were worthless. Appellant also hastened to send the bank a check for over six
million dollars which was never negotiated. The State traced the money from the Premier Bank
into the bank account of General Mercantile Finance Company. It then showed twenty
withdrawals from this account by appellant on various dates for personal use such as the purchase
of luxury cars and the payment of personal debts. Appellant's expenditure of approximately
$930,000 was alleged to be the money taken from the bank and insurance company. Given this
general background of this complex affair, we now turn to appellant's points of error.



MOTION TO QUASH INDICTMENT


 In point of error one, appellant contends that:



The trial court erred in denying appellant's motion to quash the indictment for the
reason that the indictment, on its face, shows that the venue of this case is in Harris
County, not Travis County, and that said indictment fails to allege either factual
or legal justification for returning this indictment in Travis County, thus rendering
the Travis County prosecution voidable, and requiring the conviction to be
reversed and dismissed.



 The first count of the indictment alleged a felony theft of the second degree where
the value of the property (United States currency) unlawfully appropriated (with the intent to
deprive the owner of the property) was of the aggregated value of $20,000 or more under the
penal statutes in effect at the time of the commission of the offense. (3) The alleged owners were
American Teachers Life Insurance Company and Premier Bank. The indictment averred that
consent was induced "by deception, namely, said defendants created and confirmed by words and
conduct, a false impression of fact, not believing it to be true that was likely to affect and did
affect the judgment of said owner [sic] in the transactions." There were further allegations that
the property was obtained pursuant to one scheme and continuing course of conduct. The offense
was alleged to have occurred in Harris County, but the indictment was returned by a Travis
County grand jury into a Travis County district court. The indictment also alleged that the offense
occurred while the named defendants "were engaged in the business of insurance." (4)

 In his motion to quash, appellant argued that count one of the indictment was
"defective because it fails to show the place where the offense was committed is within the
jurisdiction of this court." Appellant cited articles 13.18 and 21.02(5) of the Texas Code of
Criminal Procedure in support of his contention. Article 13.18 provides: "If venue is not
specifically stated, the proper county for the prosecution of offenses is that in which the offense
was committed." Tex. Code Crim. Proc. Ann. art. 13.18 (West 1977). Article 21.02(5)
provides: "An indictment shall be deemed sufficient if it has the following requisites: (5) it must
show that the place where the offense was committed is within the jurisdiction of the court in
which the indictment is presented." Tex. Code Crim. Proc. Ann. art. 21.02(5) (West 1989).

 Article 13.18 is applicable only "if venue is not specifically stated." Article 21.79B
of the Texas Insurance Code provides that any person who violates a penal provision of that code
or the penal code while engaged in the business of insurance may be prosecuted in Travis County
or in a county where prosecution is authorized by the Code of Criminal Procedure. Tex. Ins.
Code Ann. art. 21.79B(a) (West Supp. 1994). Appellant's reliance upon article 13.18 is
misplaced. Article 21.02(5) must be read with the understanding that there is a distinct difference
between "jurisdiction" and "venue." Jurisdiction concerns the authority or the power of the court
to try a case. District courts have the authority to try felony cases in this State. Tex. Const. art.
V, § 8; Fairfield v. State, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981). Venue means the place
where the case may be tried. Martin v. State, 385 S.W.2d 260, 261 (Tex. Crim. App. 1964). 
The fact that venue does not lie in a particular district court does not mean that the court has no
jurisdiction of the offense. Boyle v. State, 820 S.W.2d 122, 139 (Tex. Crim. App. 1991), cert.
denied, 112 S. Ct. 1297 (1992); Ex parte Watson, 601 S.W.2d 350, 351 (Tex. Crim. App. 1980);
Etchieson v. State, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978), cert. denied, 440 U.S. 936
(1979). Venue, proper or not, does not affect the power of a district court to hear and determine
a felony case. Fairfield, 610 S.W.2d at 799.

 The instant motion to quash urged that the indictment was defective for failure to
allege that the place of the commission of the offense was "within the jurisdiction of the court." 
The district court had jurisdiction of the felony offense charged, and the indictment alleged the
commission of the offense occurred in Harris County. A charging instrument generally need only
allege the county in which the offense was committed. Pinkerton v. State, 660 S.W.2d 58, 63
(Tex. Crim. App. 1983).

 Under any circumstances, this point of error is far more expansive than the
allegations of the motion to quash in claiming that the indictment failed to allege either factual or
legal justification for returning the indictment in Travis County. A claimed error on appeal must
comport with the objection at trial or nothing is presented for review. Turner v. State, 805
S.W.2d 423, 431 (Tex. Crim. App.), cert. denied, 112 S. Ct. 202 (1991); Sterling v. State, 800
S.W.2d 513, 521 (Tex. Crim. App. 1990), cert. denied, 111 S. Ct. 2816 (1991); Adams v. State,
862 S.W.2d 139, 147 (Tex. App.--San Antonio 1993, pet. ref'd). A trial objection stating one
legal basis may not be used to support a different legal theory on appeal. Rezac v. State 782
S.W.2d 869, 870 (Tex. Crim. App. 1990). Therefore, appellant did not preserve this argument
for review. However, even if we consider the substance of appellant's argument, the argument
fails.

 Article 21.06 of the Texas Code of Criminal Procedure provides:



When the offense may be prosecuted in either of two counties, the indictment may
allege the offense to have been committed in the county where the same is
prosecuted or in any county or place where the offense was actually committed.



Tex. Code Crim. Proc. Ann. art. 21.06 (West 1989). The constitutionality of this statute has been
upheld under the Sixth and Fourteenth Amendments to the United States Constitution and article
I, section 10 of the Texas Constitution. Wilson v. State, 825 S.W.2d 155 (Tex. App.--Dallas
1992, pet. ref'd). If an offense may be prosecuted in two or more counties, it is permissible to
allege that the offense was committed in the county of prosecution or in any county where the
offense was actually committed. Rushing v. State, 546 S.W.2d 610, 611 (Tex. Crim. App. 1977);
Glenn v. State, 779 S.W.2d 466, 467 (Tex. App.--Tyler 1989, pet. ref'd); Chavez v. State, 721
S.W.2d 508, 509 (Tex. App.--Houston [14th Dist.] 1986, no pet.).

 In Rushing, the court rejected the defendant's contention that the indictment was
defective because it alleged the site of the robbery as being in Dallas County rather than within
400 yards of Dallas County. 546 S.W.2d at 611; see Tex. Code Crim. Proc. Ann. art. 13.04
(West Supp. 1984). (5) Likewise, in Wilson, the indictment simply alleged the offense occurred in
Dallas County. The proof showed Tarrant County, but within 400 yards of Dallas County. The
validity of the indictment was upheld. The court concluded that there was no requirement that
the indictment justify the allegation of Dallas County. 825 S.W.2d at 159. Venue is not a
"criminative fact" and it is not a constituent element of the offense. Fairfield, 610 S.W.2d at 779;
Wilson, 825 S.W.2d at 160; Glenn, 779 S.W.2d at 469.

 The instant indictment alleged and the proof showed that the offense occurred in
Harris County. All Texas district courts have jurisdiction over felonies. Tex. Const. art. V., § 8. 
Thus, the Travis County district court, as a matter of law, had jurisdiction over the felony
charged. Moreover, the State alleged unnecessarily that appellant and his co-defendants were
"engaged in the business of insurance," apparently in order to show a basis for returning the
indictment in Travis County. See Tex. Ins. Code Ann. art. 21.79B (West Supp. 1994). We
conclude, under the circumstances, that the trial court did not err in overruling the motion to
quash the indictment. Point of error one is overruled.



CONSTITUTIONALITY OF INSURANCE CODE


 In point of error two, appellant contends that:


Senate Bill #1685 of the 1989 Texas Legislature, which created [Insurance Code]
Articles 21.79A, 21.79B and 21.79C, is unconstitutional and void under the
provisions of Article III, § 35(a), Texas Constitution, for the reason that Senate
Bill #1685 contains more than one subject.



Appellant candidly admits that this issue was not raised in the trial court, but claims that the
constitutionality of a statute may be raised for the first time on appeal. See Rabb v. State, 730
S.W.2d 751, 752 (Tex. Crim. App. 1987); Garza v. State, 822 S.W.2d 174, 175-76 (Tex.
App.--San Antonio 1991, no pet.); Garza-Garza v. State, 788 S.W.2d 651, 656 n.1 (Tex.
App.--Corpus Christi 1990, no pet.); see also Black v. State, 816 S.W.2d 350, 370 (Tex. Crim.
App. 1991); Casares v. State, 768 S.W.2d 298, 299 (Tex. Crim. App. 1989).

 In determining a statute's constitutionality, we must begin with a presumption of
the statute's validity. Faulk v. State, 608 S.W.2d 625, 630 (Tex. Crim. App. 1980); Ely v. State,
582 S.W.2d 416, 419 (Tex. Crim. App. 1979); Wilson, 825 S.W.2d at 158. We presume that
the legislature did not act unreasonably or arbitrarily in enacting the statute and that it had due
regard for constitutional requirements. Ex parte Granviel, 561 S.W.2d 503, 511 (Tex. Crim.
App. 1978); Mohammad v. State, 814 S.W.2d 137, 140 (Tex. App.--Houston [14th Dist.] 1991),
aff'd, 830 S.W.2d 953 (Tex. Crim. App. 1992). It is appellant's burden to show that the statute
is unconstitutional. Granviel, 561 S.W.2d at 511; Robinson v. Hill, 507 S.W.2d 521, 524 (Tex.
1974). Every reasonable intendment and presumption is made in favor of the constitutionality and
validity of the statute until the contrary is clearly shown. Before a legislative act will be set aside,
it must clearly appear that its validity cannot be supported by any reasonable intendment or
allowable presumption. Granviel, 561 S.W.2d at 511. Constitutional issues will not be decided
upon a broader basis than the record requires. State v. Garcia, 823 S.W.2d 793 (Tex. App.--San
Antonio 1992, pet. ref'd).

 Appellant relies upon Article III, section 35(a) of the Texas Constitution which
provides:



No bill, (except general appropriation bills, which may embrace the various
subjects and accounts, for and on account of which moneys are appropriated) shall
contain more than one subject.



Tex. Const. art. III, § 35(a). The history and purpose of article III, section 35(a) has been set
forth in the interpretative commentary to that constitutional provision in Vernon's Annotated
Texas Constitution, and in Robinson v. Hill, 507 S.W.2d 521, 524 (Tex. 1974). We need not
reiterate those discussions. One purpose of the one-subject rule is to prevent the legislative
practice of "logrolling," which refers to "the inclusion in a bill of several subjects having no
connection with each other in order to create a combination of various interests in support of the
whole bill." LeCroy v. Hanlon, 713 S.W.2d 335, 337 (Tex. 1986); State Board of Insurance v.
National Employees Benefit Administrators, Inc., 786 S.W.2d 106, 108 (Tex. App.--Austin 1990,
no writ). Liberal construction will be applied in determining whether a statute violates the
constitution by containing more than one subject. Dellinger v. State, 28 S.W.2d 537, 539 (Tex.
Crim. App. 1930); Babcock v. State, 668 S.W.2d 857, 862 (Tex. App.--Austin 1982, writ ref'd
n.r.e.); Bass v. State, 666 S.W.2d 113, 115 (Tex. App.--Beaumont 1982), aff'd, 661 S.W.2d 954
(Tex. Crim. App. 1983). A bill does not violate the one-subject rule simply because it contains
several provisions. LeCroy, 713 S.W.2d at 337. The title to the bill need only state the general
subject; it need not explain the details. Robinson, 507 S.W.2d at 525. Where the provisions of
the statute are germane in any degree, the bill will not be declared unconstitutional because it
contains more than one subject. Dellinger, 28 S.W.2d at 539. A "statute will not be held
unconstitutional where its provisions relate directly or indirectly, to the same general subject, have
a mutual connection, and are not foreign to the subject expressed in the title." Robinson, 507
S.W.2d at 524-25.

 Articles 21.79A, 21.79B and 21.79C were added to the Texas Insurance Code in
1989. Act of June 14, 1989, 71st Leg., R.S., ch. 662, § 1, 1989 Tex. Gen. Laws 2176, 2177. 
The title or caption of Senate Bill 1685, which resulted in the addition of the enumerated articles
to the Insurance Code, provided: "An act relating to the misapplication of property by persons
engaged in the business of insurance and the venue for criminal prosecution of persons engaged
in the business; providing criminal penalties." Article 21.79A defined the offense of
misapplication of property by persons engaged in the business of insurance. (6) Article 21.79B
provides that a person who violates a penal provision of the Insurance Code or a provision of the
Penal Code while engaged in the business of insurance may be prosecuted in a court of competent
jurisdiction in Travis County or in a county in which prosecution is authorized under the Code
of Criminal Procedure. (7) Article 21.79C provides that a person who commits an offense under the
Insurance Code may be prosecuted under the code or any other applicable penal statue.

 Appellant submits that S.B. 1685 contains at least two, and possibly three, separate
subjects. Appellant urges that the multiple subjects in the bill are:



Subject #1 - A new offense, i.e., "misapplication of insurance related property" is
created, with appropriate penalties attached.


Subject #2 - A venue provision is created for these "insurance related" crimes.


Subject #3 - An amendment is made to Chapter 13, Texas Code of Criminal
Procedure, which purports to apply to all Texas Penal Code offenses.



Appellant acknowledges that it is appropriate for the legislature to create a new offense within the
Insurance Code and to provide penalties for the commission of that offense;however, appellant
questions the priority of the same bill adding a venue provision. Appellant argues that legislative
"provisions for 'venue' and the creation of 'new crimes' are totally different and separate subjects
which should not be contained in the same bill of any legislative enactment." Appellant cites no
authority and we do not find his argument persuasive. The statute is presumed to be valid. An
examination of the individual parts of S.B. 1685 reveal that they are germane to one another and
germane to a common general subject. The parts have a mutual connection and are not foreign
to the subject expressed in the title of the bill. See Robinson, 507 S.W.2d at 524-25.

 Appellant additionally argues that article 21.79B of S.B. 1685 directly amended
Chapter 13 of the Texas Code of Criminal Procedure. He argues that the bill amended another
statutory code while purporting to amend only the Texas Insurance Code, thereby violating article
III, section 35(a). Senate Bill 1685 does not purport to and does not amend the Texas Code of
Criminal Procedure. There is no requirement, however desirable, that all venue provisions
relating to criminal prosecutions be found in the Code of Criminal Procedure. There are
numerous special venue statutes, 22 Tex. Jur. 3d Criminal Law § 1933 at 77 (1982), and not all
are found in the Code of Criminal Procedure. See, e.g., Tex. Gov't Code Ann. § 572.008 (West
1994). Appellant has cited no authority to support his position, and we have found none. Point
of error two is overruled.

 In his third and fourth points of error, appellant contends that his prosecution in
Travis County was erroneous because the venue provisions of article 21.79B of the Texas
Insurance Code are unconstitutional as applied to him in violation of the ex post facto principles
of Article I, section 10, of the United States Constitution and Article I, section 16, of the Texas
Constitution. If it can be validly argued that appellant has preserved his contentions for appellate
review, the question presented is whether the application of the venue provisions of article 21.79B
to the instant felony prosecution involves one of four types of legislation that implicates the ex
post facto provisions of our constitutions. See U.S. Const. art. I, § 10; Tex. Const. art. I, § 16. 
The types of legislation that implicate the ex post facto provisions of the constitutions are: (1)
every law that makes an action done before passing of the law, and which was innocent when
done, criminal; (2) every law that aggravates a crime and makes it greater than it was when
committed; (3) every law that changes the punishment, and inflicts a greater punishment than the
law annexed to the crime when committed; and (4) every law that alters the legal rules of evidence
and requires less or different evidence than the law required at the time of the commission of the
offense in order to convict an offender. Collins v. Youngblood, 497 U.S. 37, 42 (1990); French
v. State, 830 S.W.2d 607, 608 (Tex. Crim. App. 1992); Grimes v. State, 807 S.W.2d 582, 586
(Tex. Crim. App. 1991); Weston v. State, 870 S.W.2d 197, 198 (Tex. App.--Fort Worth 1994,
no pet.).

 The venue provisions of article 21.79B of which appellant complains do not fall
within the categories above. Venue is the place where the case is to be tried. Martin, 385
S.W.2d at 261. Laws that do not amend substantive law by defining criminal acts or providing
for penalties are procedural in nature. Ex parte Johnson, 697 S.W.2d 605, 607 (Tex. Crim. App.
1985); Carter v. State, 813 S.W.2d 746, 747 (Tex. App.--Houston [1st Dist.] 1991, no pet.). 
Procedure "refers to changes in the procedures by which a criminal case is adjudicated as opposed
to changes in the substantive law of crimes." Youngblood, 497 U.S. at 45-46; Ex parte Scales,
853 S.W.2d 586, 588 (Tex. Crim. App. 1993). Procedural statutes control pending litigation
from their effective date, absent an express provision to the contrary. Wade v. State, 572 S.W.2d
533, 534 (Tex. Crim. App. 1978); Medina v. State, 828 S.W.2d 268, 272 (Tex. App.--San
Antonio 1992, no pet.); Freeman v. State, 786 S.W.2d 56, 58 (Tex. App.--Houston [1st Dist.]
1990, no pet.). Even though it may be disadvantageous to a defendant, a procedural change is
not ex post facto. Dobbert v. Florida, 432 U.S. 282, 293 (1977). By labeling a law
"procedural," however, a legislature does not thereby immunize it from scrutiny as an ex post
facto law. Subtle ex post facto violations are no more permissible than overt ones; but the
prohibition to be avoided is the one defined by the categories described in Youngblood, 497 U.S.
at 42, 46.

 Appellant and the State both agree that the allegation "while engaged in the business
of insurance" was taken from the language of article 21.79B(a) and used to explain venue in
Travis County. Appellant urges, however, that the language created another element of the felony
theft offense of which he was convicted, rendering article 21.79B(a) an ex post facto law as
applied to him. We disagree. Appellant further contends that the Texas constitutional provision
in article I, section 16 prohibiting "retroactive legislation" was violated. This provision has never
been applied to statutes merely affecting matters of procedure that do not disturb vested,
substantial rights. Grimes, 807 S.W.2d at 587. The venue provisions of article 21.79(B)(a) do
not violate the "retroactive legislation" provision of Article I, section 16. Appellant had no vested
right to have the case tried in Harris County. Cf. Tex. Code Crim. Proc. Ann. arts. 13.08, 13.18
(West 1977). We find no constitutional error. Points of error three and four are overruled.



BANK FAILURE


 In point of error five, appellant complains that the trial court erred in admitting,
over objection, the fact that Premier Bank, one of the alleged owners, had "closed." Appellant
urges that the evidence implied that appellant's action had precipitated the bank failure and was
highly prejudicial and without probative value.

 Bruce McLain was president of Premier Bank at the times in question. During
direct examination he made no mention of the bank's closure. On cross-examination by appellant,
McLain testified that the individual files on the single-premium immediate annuities in question
were complete when they were in his possession at Premier Bank. His examination of the files
at trial, however, showed that only one file that was still complete. Many of the other files had
documents missing. Later, outside the jury's presence, the prosecutor stated that he intended to
ask McLain about the closure or failure of the bank on March 31, 1989. The prosecutor urged
that appellant had "opened the door" to the limited inquiry sought; that appellant had left the
distinct impression that the files were incomplete for unknown reasons; that the missing
documents were not the fault of either the district attorney's office or the witness McLain; and that
the files were complete up to March 31, 1989, when the regulators (FDIC) took control of the
bank. The prosecutor urged that everyone knows "what happens when an independent regulatory
agency takes over. The documents go here and there." Appellant objected on the basis that the
evidence would be hearsay and prejudicial. The objection was overruled. The trial court
concluded that the door had been opened and that the witness could testify as to the specific date
the regulators took control of the bank.

 To perfect a bill of exception, appellant offered defense exhibit nine to the court,
a bank examiner's report detailing a number of reasons for the bank's failure. All of this was
made part of the record outside the jury's presence. Subsequently on re-direct examination before
the jury, McLain was asked:



Q: I'd like to ask you to tell the jury what happened at 5 o'clock on March 31st,
1989.


A: Premier Bank was closed.


 MR. RAMSEY [defense counsel]: Your Honor, I will object -- I don't mean
to interrupt the witness.


 MR. LANE [prosecutor]: I don't have a question pending.


 MR. RAMSEY: All right. Your Honor, I would object to that. That is a
hearsay event prejudicial to the record. It has to do with regulatory activity that
has nothing to do with this trial or that has very little to do with this trial. I bottom
that objection upon the exhibit I have shown the Court out of the presence of the
jury and suggest that the prejudicial impact is greater than the probative value and
that the event is a hearsay event so far as reasons for the closure is concerned.


 I invite the Court's attention again to what was made out of the presence of
the jury an exhibit; that is, Defense Exhibit No. 9, being the final report.


 And for those reasons, Your Honor, I object and ask that the jury be
instructed to disregard the answer given by the witness.


 THE COURT: Approach the bench.


(Whereupon the following proceedings were had at the bench):


 THE COURT: As I understand it his testimony was the bank was closed and
he was president; is that correct?


 MR. LANE: That's correct.



Thereafter, the trial court overruled the objection, did not instruct the jury to disregard the
question or answer, and denied the mistrial motion. The interrogation about the bank's closure
was not pursued and was not mentioned in oral argument by either party.

 When the defendant "opens the door" on an issue by attempting to present an
incomplete picture of an incident, the State is permitted to complete the picture by presenting
evidence that would have otherwise been inadmissible. Lucas v. State, 791 S.W.2d 35, 53, 54
(Tex. Crim. App. 1989); Green v. State, 831 S.W.2d 89, 94 (Tex. App.--Corpus Christi 1992,
no pet.); see also Kuczaj v. State, 848 S.W.2d 284, 296 (Tex. App.--Fort Worth 1993, no pet.). 
In Green, the defendant on cross-examination of Officer Torres, questioned the degree of force
used by Torres in making the arrest, implying that Torres "had it in" for the defendant. It was
held that the defendant opened the door for the State to show the true reason the officer used
forceful measures. Id. 831 S.W.2d at 94. "We pause to note that it is well established that
evidence used to explain a matter need not be ordinarily admissible." Lucas, 791 S.W.2d at 53.

 Questions of relevance should be left largely to the trial court, relying on its
observations and experience, and a conviction will not be reversed absent an abuse of discretion. 
Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App.), cert. denied, 114 S. Ct. 445 (1993). 
Error may not be predicated upon a ruling admitting evidence unless a substantial right of the
party is affected. Tex. R. Crim. Evid. 103(a). If there was error in the admission of the
evidence, it was harmless error under the test of Rule 81(b)(2). See Tex. R. App. P. 81(b)(2);
Harris v. State, 790 S.W.2d 568 (Tex. Crim. App. 1989). Point of error five is overruled.



FEDERAL TEXAS LIENS


 In point of error six, appellant contends that the "trial court erred in overruling
appellant's objection to the State's presentation as to evidence concerning the reasons and details
as to appellant's tax debt to the Internal Revenue Service, where such evidence was irrelevant,
immaterial and highly prejudicial to the facts of this case." In establishing its case, and in an
attempt to show intent and motive, the State traced the money from Premier Bank into the bank
account of General Mercantile Finance Company, which was controlled by appellant. The State
then showed appellant's personal use of the money to buy luxury cars and to pay past
indebtedness. An attorney testified that appellant paid his legal fees of $1,500 in January 1989,
and appellant's ex-wife related that appellant paid her $98,000 in December 1988 for the
settlement of a claim she had against him. Ben Lee Cook, an agent for the Internal Revenue
Service, was then called as a State's witness.

 During Cook's testimony, but outside the jury's presence, the State offered certified
records from the office of the Harris County Clerk, each entitled "Certificate of Release of
Federal Tax Lien." See Tex. R. Crim. Evid. 902(1). Appellant made clear then, as he does now,
that he had no objection to evidence that he paid taxes due to I.R.S., but he did object to evidence
that federal tax liens were imposed. He contended then that such evidence was prejudicial and
not relevant. The objections were overruled. The three exhibits or certificates were introduced
and published to the jury. Cook testified that the exhibits represented the release on January 18,
1989, of federal tax liens against appellant. Much of Cook's testimony came from the face of the
exhibits. The trial court overruled appellant's objections when Cook explained that the taxes,
"1040" and "941," reflected on the exhibits were personal income tax and an employment tax
(social security) withholding. Cook also testified as to when the taxes accrued and that appellant
had paid $10,289.51, $13,551.60 and $14,411.81 to satisfy income tax liens and $60,981.06 for
the release of the employment tax, all of which the certificates reflected.

 In his point of error, appellant urges that the trial court erred in overruling an
objection "concerning the reasons and details" as to his tax debt. He has not pointed out where
this specific objection was made if independent of his "prejudicial" and relevancy objections. We
have found no such specific objection. See Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim.
App. 1986) (holding that the complaint on appeal must comport with the trial objection).

 Appellant expressly bases his argument on appeal on Rules 401, 402, and 403 of
the Texas Rules of Criminal Evidence. Evidence is "relevant" if it has "any tendency to make the
existence of any fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence." Tex. R. Crim. Evid. 401. Generally, all
relevant evidence is admissible. See Tex. R. Crim. Evid 402. The approach under Rule 403 is
to admit relevant evidence unless the probative value is substantially outweighed by the danger
of unfair prejudice to a defendant. Tex. R. Crim. Evid. 403; Crank v. State, 761 S.W.2d 328,
342 n.5 (Tex. Crim. App. 1988). Rule 403 favors the admissibility of relevant evidence and the
presumption is that relevant evidence will be more probative than prejudicial. Montgomery v.
State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). The State urges that the
evidence was relevant and admissible to show intent and motive in this complex, white-collar theft
case and necessary to show the context of the offense. Evidence of the context of the offense is
almost always admissible so that a jury may have the offense placed in its proper setting so that
all evidence may be realistically evaluated. Mann v. State, 718 S.W.2d 741, 744 (Tex. Crim.
App. 1986), cert. denied, 481 U.S. 1007 (1987); Rodriguez v. State, 871 S.W.2d 312, 316 (Tex.
App.--Amarillo 1994, no pet.). Upon objection, the trial court performed the balancing act under
Rule 403 and determined that the evidence was admissible. Questions of relevance should be left
largely to the trial court relying upon its own observations and experience, and its decision will
not be reversed absent an abuse of discretion. Moreno, 858 S.W.2d at 463. Finding no abuse
of discretion in the admission of evidence, point of error six is overruled.



CROSS-EXAMINATION



 Appellant presents his points of error seven and eight in the following form:



Point of error seven



The trial court erred in their [sic] overruling appellant's objections to the cross-examination of defense witness Rentea on the grounds that the State improperly
impeached with evidence of an alleged collateral civil judgment, conducted in some
unknown prior litigation, where the prosecution asserted that the prior extraneous
civil judgment was "evidence" of the defense witness' unreliable opinion
testimony.


Point of error eight



The trial court violated Rule 612(b), Texas Rules of Evidence, by failing to require
the State to produce for appellant's counsel's examination, the extrinsic evidence
supporting the collateral civil judgment used by the State to impeach defense
witness Rentea, over appellant's objection that he was being denied the ability to
"cross-examine and confront" this alleged extrinsic evidence.



 Our examination of the record shows that the complaints on appeal in points of
error seven and eight do not comport with the trial objections and present nothing for review. 
Thomas, 723 S.W.2d at 700. The sole defense witness, Bogdan Rentea, was called and qualified
as an expert witness in the field of insurance regulatory law. Rentea, an attorney, had been
retained by American Teachers Life Insurance Company during some of its difficulties with the
insurance board examiners beginning in September or October 1988. Appellant urges on appeal
that Rentea was clearly qualified to provide an opinion concerning "the validity of appellant's
position with regard to this insurance premium financing plan."

 On direct examination, Rentea testified that as to the first lien promissory notes of
the Madison County Land Company (commercial growth chamber packages) were in his opinion,
"admissible assets" under the Insurance Code and applicable caselaw. He related that he had done
"a lot of legal research" to determine if the position he was going to take in various hearings was
sustainable in law and in fact. The record then reflects:



Q: And in your opinion, were they?


A: Those are the arguments I made to the courts. Yes.


Q: And that is your opinion now?


A: Yes, it is.



On cross-examination, Rentea was asked if the insurance company was having solvency problems. 
He answered in part and the record shows:



A: . . . But I can't say that I know for a fact that they had solvency problems. 
I mean that the determination that [was] ultimately made, of course.


Q: Yes. And the determination by the way, that was ultimately made [by] a judge
in this county is that the company was insolvent; is that correct, Mr. Rentea?



Appellant objected to the question on the basis of hearsay, denial of confrontation, and
"prejudicial value as far as 403 is concerned." The objection was overruled. Appellant directs
our attention to this question as a source of error. The prosecutor, however, moved off to other
questions, and the particular question was never answered.

 Subsequently, the prosecutor asked: "And in the course of your representation of
American Life Insurance Company, is it not true, Mr. Rentea, that the judge rejected your opinion
on the admissibility of these notes -- these loans you have been examining here in the courtroom
today?" Appellant objected to the question on the basis that what had occurred in another trial
on different issues had nothing to do with the instant case. The jury was removed and appellant
further objected on the basis of hearsay and that the "civil litigation should not be addressed
within the four corners of this cause." The objections were overruled. Rentea subsequently
admitted that another trial court had rejected his arguments concerning the admissibility of the
growth chambers notes.

 "Civil Rule 611/Criminal Rule 610 recognizes the centrality of cross-examination
in the adversary system, sanctioning the use of leading questions and attacks upon credibility." 
1 Steven Goode, Olin G. Wellborn III, & M. Michael Sharlot, Guide To The Texas Rules of
Evidence: Civil and Criminal, § 611.4 at 621 (Texas Practice 2d ed. 1993). The State's right to
cross-examine a witness is required for accurate determination of guilt and in order to prevent
fraud upon the court. Keller v. State, 662 S.W.2d 362, 364 (Tex. Crim. App. 1984). Generally,
impeachment on a collateral issue is not permissible. Ramirez v. State, 802 S.W.2d 674, 675
(Tex. Crim. App. 1990). An exception exists, however, when the witness "opens the door" by
raising a collateral matter on direct examination. Then, impeachment is permissible. Hammett
v. State, 713 S.W.2d 102, 105 n.4 (Tex. Crim. App. 1986). The door was opened when Rentea
stated that he had offered his opinion "to the courts," implying that his opinion was legally
acceptable. The State had the right to cross-examine as it did. No formal civil judgment was used
in the impeachment process. Appellant's appellate complaints do not comport with his trial
objections. Points of error seven and eight are overruled.



JURY INSTRUCTION


 In his ninth point of error, appellant contends that:



The trial court erred in overruling appellant's objection to the Court's charge on
the grounds that the Court's application of the law to the facts, wherein the Court
instructed on the law of parties was erroneous, where the court instructed that
appellant was "either acting alone or with another as a party to the offense,"
without specifically applying the facts of this case to the application of the parties'
charge.



 In the abstract or definitional portion of the charge, the trial court instructed the
jury on the law of parties as follows:



A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.


(1) A person is criminally responsible for an offense committed by the conduct of
another if acting with the kind of culpability required for the offense, he causes
or aids an innocent or nonresponsible person to engage in conduct prohibited
by the definition of the offense; or


(2) A person is criminally responsible for an offense committed by the conduct of
another if acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.



 In pertinent part, the trial court charged the jury in the application paragraph:



Now bearing in mind the foregoing instructions, if you find and believe from the
evidence beyond a reasonable doubt that the Defendant, Thermon Maurice
Skillern, either acting alone or with another as a party to the offense, as that term
is hereinbefore defined, while engaging in the business of insurance, on or about
the following dates, in Harris County, Texas, intentionally or knowingly
appropriated property by acquiring or otherwise exercising control over property,
namely United States currency, with intent to deprive the owner of the property
and without the effective consent of the owner, American Teachers Life Insurance
Company or Premier Bank, said consent being induced by deception, namely, said
defendant either acting alone or with another as a party to the offense, created by
words or conduct, a false impression of fact, that was likely to affect and did affect
the judgment of said owner in the transactions. The property, if any, was
appropriated in the following amounts and on the following dates:



 Appellant's objection to the foregoing application paragraph of the court's charge
was:



MR. AMANN: Your Honor, moving on to Heading III, which is the application
paragraph, I would object to that portion of the charge which talks in terms of
parties and simply states with respect to parties "as that term is hereinbefore
defined." There is no specific application of the law of parties in this case made
applicable to the facts. We don't know under which one or two we're proceeding,
and there's no application with respect to one or two in the definition of "parties"
as those definitions apply to the facts.


We don't know with any certainty what facts are sought to be implied for those
abstract definitions of "parties." There is no clear and unambiguous application
of the law to the facts with respect to the definition of parties in that paragraph,
Judge. I don't think by simply saying "as parties as hereinbefore defined" gets us
there.


. . . .


I think when we bring parties into the case, you ought to have in front of the
specific facts how the party charge relates to those specific facts. I, therefore,
believe that this application paragraph is deficient for two reasons. It does not
adequately apply the law to the facts in the general sense, and it certainly does not
apply the law of parties to the specific facts in this case.



(Emphasis added).

 A defendant's objection to the court's charge should "distinctly" specify each
ground of objection. Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 1994). "The purpose
of this rule is to enable the trial judge to know in what respect the defendant regards the charge
as defective and to afford him an opportunity to correct it before reading the charge to the jury." 
Seefurth v. State, 422 S.W.2d 931, 936 (Tex. Crim. App. 1967).

 The major thrust of appellant's objection was that the instruction was defective
because "we don't know under which one or two we're proceeding," a reference to the abstract
or definitional portion of the charge. On appeal, appellant now complains that (1) the instruction
was deficient because it allowed the jury to convict if it found appellant acted "alone"; (2) that the
named co-defendants, Rankin and Harris, should have been named in the application paragraph;
and (3) eight other individuals should have also been named in the application paragraph. 
Complaints on appeal that do not comport with trial objections do not present anything for
appellate review. Nelson v. State, 864 S.W.2d 496, 499 (Tex. Crim. App. 1993), cert. denied,
127 L.Ed.2d 686 (1994); Cook v. State, 858 S.W.2d 496, 499 (Tex. Crim. App. 1993); Turner
v. State, 805 S.W.2d 423, 431 (Tex. Crim. App.), cert. denied, 112 S. Ct. 202 (1991); Thomas,
723 S.W.2d at 700. As to the general validity of the use of the phrase "either acting alone or as
a party, as that term has been defined" in the application paragraph of a charge in connection with
the law of parties, see Chatman v. State, 846 S.W.2d 329 (Tex. Crim. App. 1993). Point of error
nine is overruled.



COURT'S CHARGE--MISTAKE OF FACT


 In point of error ten, appellant contends that the trial court erred in overruling
appellant's objection to the court's charge "with regard to the application of 'mistake of fact'
instruction for the reason that this instruction fails to properly apply the law to the facts." 
Appellant submitted special requested charges on mistake of fact. The trial court denied all except
one, which was granted in part and submitted in a modified version. The charge given provided
in pertinent part:



So, if you find from the evidence in this case that at the time defendant, Thermon
Maurice Skillern, acquired and otherwise exercised control over the property in
question, he acted under a mistake of fact, that is, a reasonable belief that the
premiums for the annuities had been paid to American Teachers Life Insurance
Company or if you have a reasonable doubt thereof, you will find the defendant not
guilty.



To this charge, the appellant objected:



[W]e would specifically object to the mistake of fact charge that has been given by
the court because it is not specific enough in our opinion and would request the
court by reference to look at those requested instructions which have been denied
at this point.



The objection was overruled.

 On appeal, appellant complains that there were a number of different "mistakes of
fact" which could have exculpated his conduct in the case, but that the trial court charged only on
the one concerning whether the "annuity premium had been paid." (8) Appellant argues that "there
could have been no mistake on appellant's part as to the actual 'payment' of the premiums since
he had the sole responsibility for that act!" He therefore urges that the charge given was
improper.

 Appellant then argues that if there was a mistake of fact it involved "why" Louis
Harris did not cash the millions of dollars in checks appellant wrote to the American Teachers
Life Insurance Company and "book" the cash as assets of the insurance company. Appellant fails
to point to any testimony supporting appellant's mistake of law or belief that Harris had cashed
the checks. In fact, the testimony indicated that the checks would not have cleared if they had
been negotiated. Appellant's claim of "mistake of fact" on appeal was not a part of any of the
special requested charges or instructions at trial. It is only now advanced by appellate counsel. 
Complaints on appeal that do not comport with trial objections do not preserve error for review. 
Cook, 858 S.W.2d at 499; Rezac, 782 S.W.2d at 870; Thomas, 723 S.W.2d at 700. Point of
error ten is overruled.



COURT'S CHARGE--CULPABLE MENTAL STATES


 In his eleventh point of error, appellant complains that the trial court erred in
overruling his objection to that portion of the court's charge defining the culpable mental states.
In the abstract or definitional portion of the court's charge, the trial court gave the full statutory
definitions of "intentionally" and "knowingly." See Tex. Penal Code Ann. §§ 6.03(a), (b) (West
1994), Appellant objected to this part of the charge because the definitions included the "nature
of his conduct" and "engage in conduct" language rather than focusing strictly on "the result of
his conduct or causing the result."

 Appellant's complaint is based on the rule that the charge should contain only that
portion of the statutory definition which corresponds to the culpable mental state proscribed by
the offense. Garza v. State, 794 S.W.2d 497, 500-01 (Tex. App.--Corpus Christi 1992, pet.
ref'd). Accordingly, the type of offense charged dictates which portion or portions of the culpable
mental state definitions should be submitted to the jury. Id. In McQueen v. State, 781 S.W.2d
600 (Tex. Crim. App. 1989), the court pointed out that section 6.03 of the Texas Penal Code
delineates three "conduct elements" which may be involved in an offense: (1) the nature of the
conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. An
offense may contain any one or more of these "conduct elements" which alone or in combination
form the overt behavior which the Legislature intended to criminalize; it is those essential
"conduct elements" to which a culpable mental state must apply. Id. at 603; Murray v. State, 804
S.W.2d 279, 281 (Tex. App.--Fort Worth 1991, no pet.). When an offense is only a "result" or
"nature of conduct" offense, the trial court should submit statutory definitions of "intentionally"
or "knowingly" which are limited to the specific conduct element required for the offense. 
Murray, 804 S.W.2d at 281; see also Saldivar v. State, 783 S.W.2d 265, 268 (Tex. App.--Corpus
Christi 1989, no pet.); Bosier v. State 771 S.W.2d 221, 225 (Tex. App.--Houston [1st Dist.] 1989,
pet. ref'd). The difficulty is that an offense may not fit neatly into either a "result" type or a
"nature of conduct" offense. Bosier, 771 S.W.2d at 225; Adams v. State, 744 S.W.2d 622, 628-29 (Tex. App.--Fort Worth 1987, pet. ref'd). "The problem is that not all offenses are
characterized by a single conduct element." Cook v. State, No. 0424-92, slip op. at 3 (Tex. Crim.
App.--Apr. 13, 1994) (Maloney, J., concurring). (9) When an offense is both a "result" and a
"nature of the conduct" offense, the trial court should submit complete statutory definitions of
"intentionally" or "knowingly" so that the jury can consider both the result of the offender's
conduct and the nature of the conduct. Murray, 804 S.W.2d at 281; Saldivar, 783 S.W.2d at 267-68.

 Appellant urges that theft is purely a "result-oriented" crime and that the trial court
erred, over objection, in not limiting the definitions of "intentionally" and "knowingly" in the
abstract portion of the court's charge to the "result of conduct" element. Appellant has not cited
a case directly on point, and we have found none. In McClain v. State, 687 S.W.2d 350 (Tex.
Crim. App. 1985), which involved theft convictions, the court stated:



"Few property transactions do not involve the acquisition of another's property
with intent to deprive him of it," Committee Comment to § 31.03. Thus, the
committee (and later the Legislature) recognized that what separates lawful
acquisition conduct from theft is knowledge of a crucial "circumstance surrounding
the conduct"--that the acquisition is "without the owner's consent." The crime of
theft requires the "forbidden conduct" element of the offense ("exercise of control
over property") to be accompanied by this "circumstance surrounding the
conduct," and V.T.C.A. Penal Code, § 6.03(b), requires proof of the actor's
knowledge of that "circumstance surrounding the conduct": that the conduct is
"without the owner's consent." With this crucial feature, the actor's acquisitive
conduct is clearly "unlawful." See Lugo-Lugo v. State, 650 S.W.2d 72 (Tex.
Crim. App. 1983) (opinion concurring on state's motion for rehearing).



Id. at 354 (footnotes omitted).

 Unauthorized use of a motor vehicle is or may be a lesser-included offense of theft. 
State v. Houth, 845 S.W.2d 853, 869 (Tex. Crim. App. 1992); Ex parte Jefferson, 681 S.W.2d
33, 34 (Tex. Crim. App. 1984); Neely v. State, 571 S.W.2d 926, 928 (Tex. Crim. App. 1978);
Teague v. State, 789 S.W.2d 380, 382 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). In
McQueen, an appeal from an unauthorized use of vehicle conviction, the Court of Criminal
Appeals wrote:



As discussed above, some form of culpability must apply to those "conduct
elements" which make the overall conduct criminal. Therefore, we hold that Sec.
31.07 encompasses two "conduct elements," viz: that the defendant intentionally
or knowingly operated a vehicle (nature of conduct) knowing that such operation
was without the effective consent of the owner (circumstances surrounding
conduct).



781 S.W.2d at 604. 

 Aggravated robbery committed while in the act of committing theft is not easily
categorized as a "result" offense or a "nature of conduct" offense. Garza, 794 S.W.2d at 500. 
Depending on the allegations of the indictment, aggravated robbery may include all three "conduct
elements." Id.; see Hernandez, 819 S.W.2d at 811-812; see also Cook, slip op. at 11 n.5. With
this background, we examine the instant theft offense as set out in the first count of the indictment
under which appellant was convicted. A person commits theft if he unlawfully appropriates
property with intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a)
(West 1994). Appropriation of property is unlawful if it is without the owner's effective consent. 
Tex. Penal Code Ann. § 31.03(b)(1) (West 1994). Consent is not effective if it is induced by
deception. Penal Code, 63d. Leg., R.S., ch. 399, sec. 1, § 31.01(4)(A), 1973 Tex. Gen. Laws
883, 929 (Tex. Penal Code Ann. § 31.01(4)(A), since renumbered as § 31.01(3)(A)). 
"Deception" can involve "creating or confirming by words or conduct a false impression of law
or fact that is likely to affect the judgment of another in the transaction, and that the actor does
not believe to be true." Penal Code, 63d, R.S., ch. 399, § 31.01(2)(A), 1973 Tex. Gen. Laws
883. 928 (Tex. Penal Code Ann. § 31.01(2)(A), since renumbered as § 31.01(1)(A)). It is this
part of the statutory definition of "deception" that the trial court in the instant cause submitted in
its jury charge along with a definition of "effective consent." The "nature of the forbidden
conduct" under the applicable theft statute is appropriation of property. Mills v. State, 722
S.W.2d 411, 415 (Tex. Crim. App. 1986). Appropriation must be accompanied by the specific
intent to deprive the owner of property. Id. Appropriation is rendered "unlawful" according to
the "circumstances surrounding" that conduct, viz: that it is, and the actor knew it to be without
the owner's consent. Id. When relevant at all in a theft prosecution, "deception" goes to the
nature of the conduct and becomes part and parcel of the circumstances surrounding the conduct
of the accused so as to render consent to the particular appropriation of property ineffective and
to provide evidence of accused's knowledge that it was, in fact, ineffective. Cheney v. State, 755
S.W.2d 123, 131 (Tex. Crim. App. 1988) (Clinton, J., concurring); Mills, 722 S.W.2d at 415. 
See also Paul H. Robinson & Jane A. Grull, Element Analysis in Defining Criminal Liability: The
Model Penal Code and Beyond, 35 Stan. L. Rev. 681, 707-09 (1983).

 The thrust of the indictment in this cause was that appellant and his co-defendants
did intentionally and knowingly appropriate property by acquiring and exercising control over
United States Currency with intent to deprive the owners thereof without their effective consent,
the consent being induced by deception, the words and conduct of the defendant, pursuant to one
scheme and continuing course of conduct. The application paragraph of the charge tracked the
language of the indictment. In light of the indictment's allegations, the facts presented, and the
charge of the court, the trial court did not err in submitting the full statutory definitions of
"intentionally" and "knowingly." See McClain, 687 S.W.2d at 354; see also Hernandez, 819
S.W.2d at 811-12. Theft, as charged, was not strictly a result-oriented offense as claimed by
appellant. Point of error eleven is overruled.



MISJOINDER OF OFFENSES


 In point of error twelve, appellant contends that:



The trial court erred in refusing to force the State to "elect" which of the two
allegations of "ownership" the State was relying on for conviction, i.e., either
American Teachers Life Insurance Company or Premier Bank, thus rendering the
disjunctive submission of the two owners erroneous, which rendered the Court's
charge duplicitous, constituting an improper joinder of separate and distinct
offenses and thus denying appellant due course of law and a fair trial as guaranteed
under Article I, § 10, § 14 and § 19 and Articles 21.08 and 21.24, V.A.C.C.P.



 In addition to the above stated point of error, appellant complainS of the overruling
of his thrice-urged motion for the State to "elect," the trial court's charge, the validity of the
indictment, the sufficiency of the evidence, and other matters, including a suggestion of double
jeopardy. This is a classic multifarious point of error and presents nothing for review. Adkins
v. State, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988); Euzierre v. State, 648 S.W.2d 700, 703
(Tex. Crim. App. 1983); Michael v. State, 864 S.W.2d 104, 109 (Tex. App.--Dallas 1993, no
pet.). By combining more than one contention in a single point of error, an appellant risks
rejection on the ground that nothing is presented for review. Sterling v. State, 800 S.W.2d 513,
521 (Tex. Crim. App. 1990), cert. denied, 111 S. Ct. 2816 (1991); Cuevas v. State, 742 S.W.2d
331, 335 n.4 (Tex. Crim. App. 1987), cert. denied, 485 U.S. 1015 (1988); Macias v. State, 733
S.W.2d 192, 193 (Tex. Crim. App. 1987), cert. denied, 484 U.S. 1079 (1988); Kelley v. State,
817 S.W.2d 168, 172 (Tex. App.--Austin 1991, pet. ref'd). Appellant, like the defendant in Davis
v. State, 513 S.W.2d 928, 930 (Tex. Crim. App. 1974), seeks, in part, to accumulate points of
error otherwise asserted in one point of error. We will limit our discussion of point twelve to the
duplicity issue.

 "Duplicity is the joinder of two or more distinct offenses in the same count, or the
joinder in the same count of two or more phases of the same offense." Burrell v. State, 526
S.W.2d 799, 801 n.1 (Tex. Crim. App. 1975). Article 1.14(b) of the Texas Code of Criminal
Procedure provides:



If the defendant does not object to a defect, error, or irregularity of form or
substance in an indictment or information before the date on which the trial on the
merits commences, he waives and forfeits the right to object to the defect, error,
or irregularity and he may not raise the objection on appeal or in any other
postconviction proceeding. Nothing in this article prohibits a trial court from
requiring that an objection to an indictment or information be made at an earlier
time in compliance with Article 28.01 of this code.



Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp. 1994). (10)

 Appellant candidly admits that the issue of duplicity was not raised by a pretrial
motion to quash or set aside the indictment. This Court only recently held that under article
1.14(b), a defendant who did not bring the misjoinder of offenses to the attention of the trial court
prior to trial waived his right to demand an election by the State, and that the trial court properly
submitted the case to the jury without requiring an election. Nolte v. State, 854 S.W.2d 304, 308
(Tex. App.--Austin 1993, pet. ref'd). While there were separate counts in Nolte, we find no
reason why article 1.14(b) would not be applicable in the instant case. Even before the enactment
of article 1.14(b), duplicity in the indictment could not be raised for the first time on appeal
without a timely and proper trial objection. Romo v. State, 593 S.W.2d 690, 694 (Tex. Crim.
App. 1980); Livingston v. State, 542 S.W.2d 655, 657 (Tex. Crim. App. 1976); Fee v. State, 722
S.W.2d 234, 242 (Tex. App.--San Antonio 1986), rev'd on other grounds, 841 S.W.2d 392 (Tex.
Crim. App. 1992).

 Although there was no compliance with article 1.14(b), appellant did raise the
question of duplicity in the indictment after the State rested its case-in-chief, and again when he
rested his case. Appellant briefly renewed his motion to elect when he objected to the trial court's
charge to the jury because both alleged owners were included in the same application paragraph
of the charge, albeit disjunctively rather than conjunctively submitted as alleged in the first count
of the indictment. All of these motions and objections were overruled.

 Appellant relies upon article 21.24(b) of the Texas Code of Criminal Procedure, 
which provides that a count may contain as many paragraphs charging the same offense as
necessary but that no paragraph may charge more than one offense. Tex. Code Crim. Proc. Ann.
art. 21.24(b) (West 1989). The count of the indictment in question charged aggregated theft under
section 31.09 of the Texas Penal Code which provides in part: "When amounts are obtained in
violation of this chapter pursuant to one scheme or continuing course of conduct, whether from
the same or several sources, the conduct may be considered as one offense. . . ." Tex. Penal
Code Ann. § 31.09 (West 1994). (Emphasis added). Thus, multiple instances of theft may be
joined in a single offense and the value aggregated. Talamantz v. State, 829 S.W.2d 174, 176
(Tex. Crim. App. 1992). It was the legislative intent to treat theft under section 31.09 as one
offense. Lehman v. State, 792 S.W.2d 82, 85 (Tex. Crim. App. 1990); Wages v. State, 573
S.W.2d 804, 806 (Tex. Crim. App. 1978). A defendant so charged is not entitled to a severance
of offenses. Brown v. State, 640 S.W.2d 275 (Tex. Crim. App. 1983); Wages, 573 S.W.2d at
806. Moreover, the State is not normally required to elect where it is dealing with one offense
involving many transactions. Crocker v. State, 573 S.W.2d 190, 199 (Tex. Crim. App. 1978);
McCaleb v. State, 537 S.W.2d 728, 731 (Tex. Crim. App. 1976); McClelland v. State, 390
S.W.2d 777, 780-81 (Tex. Crim. App. 1965), cert. denied, 382 U.S. 928 (1966). There is no
merit to appellant's argument.

 Appellant also urges that the evidence is insufficient to show "joint ownership,"
and that the State failed to show that appellant appropriated any money from American Teachers
Life Insurance Company, did not establish any "special ownership" of any property belonging to
the insurance company, and did not show the taking of any money from the insurance company
without the owner's effective consent as alleged. These evidentiary complaints were not presented
to the trial court in connection with the motions to elect. Appellate complaints not comporting
with trial objections present nothing for review. (11) Fuller v. State, 827 S.W.2d 919, 928 (Tex.
Crim. App. 1992); Turner, 805 S.W.2d at 431; Rezac, 782 S.W.2d at 870. The multifarious
twelfth point of error is without merit and is overruled.



ACCOMPLICE WITNESS INSTRUCTION


 In point of error thirteen, appellant contends that the trial court erred in failing to
instruct the jury that R. Ray Rankin was an accomplice witness as a matter of law, "thus rendering
the court's charge fatally defective." Rankin, an indicted co-defendant, was a State's witness. 
He was an accomplice witness as a matter of law. See Selman v. State, 807 S.W.2d 310, 311
(Tex. Crim. App. 1991); Harris v. State, 790 S.W.2d 568, 574 (Tex. Crim. App. 1989). The
trial court did not give an accomplice witness charge. Tex. Code Crim. Proc. Ann. art. 38.14
(West 1979). Appellant neither objected nor submitted a special requested charge. See Tex. Code
Crim. Proc. Ann. arts. 36.14, 36.15 (West Supp. 1994). Appellant now claims fundamental
error. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

 Appellant urges that Rankin's testimony was an integral part of the State's case. 
The State argues that Rankin, a co-defendant, gave testimony favorable to appellant on cross-examination and that appellant did not want an accomplice witness instruction, but now is using
a different ploy to seek the best of both worlds. Article 38.14 of the Texas Code of Criminal
Procedure provides:



A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the
commission of the offense.



Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). An accomplice witness has been described
as a discredited witness whose testimony should be viewed with caution as it is from a corrupt
source. Paulus v. State, 633 S.W.2d 827, 843 (Tex. Crim. App. 1982). By virtue of article
38.14, the testimony of an accomplice witness alone cannot furnish the basis for a conviction. 
Id. In Edwards v. State, 427 S.W.2d 629 (Tex. Crim. App. 1968), the Court wrote:



The test as to the sufficiency of the corroboration is to eliminate from consideration
the evidence of the accomplice witness and then to examine the evidence of other
witnesses with the view to ascertain if there be inculpatory evidence, that is
evidence of incriminating character which tends to connect the defendant with the
commission of the offense. If there is such evidence, the corroboration is
sufficient; otherwise it is not.



Id. at 632.

 Appellant relies upon Almanza for the proposition that if there was no objection to
the court's charge, the case will still be reversed if the error was so egregious and created such
harm that it deprived the accused of a fair and impartial trial. Id. 686 S.W.2d at 171. In
determining if there was egregious error, the actual degree of harm must be assayed in light of
the entire jury charge, the state of evidence, including the contested issues and weight of probative
evidence, the argument of counsel, and any other relevant information revealed by the record of
the trial as a whole. Id. In Saunders v. State, 817 S.W.2d 688 (Tex. Crim. App. 1991), the
court pointed out that:



Much of the impetus for our holding in Almanza was perceived need to avoid the
tyranny of hard and fast rules . . . . The issue of harm was seen mainly as an
empirical question, and, therefore, primarily contingent on the individual
peculiarities of each trial considered as a whole . . . a formal taxonomy of
reversible errors has no place in such a scheme.



Id. at 686-90.

 Appellant makes no effort to show the lack of sufficient corroboration of Rankin's
testimony or to demonstrate egregious harm. He simply urges that "harmful error under the
complicated circumstance of this case" requires reversal. An examination of the record clearly
shows corroboration of Rankin's testimony under article 38.14 and the test expressed in Edwards. 
Appellant's point of error thirteen is overruled.



PROOF OF OWNERSHIP


 In point of error fourteen appellant challenges the sufficiency of the evidence "to
prove 'ownership' [of the stolen United States currency] on behalf of either corporate entity, i.e.,
Premier Bank or American Teachers Life Insurance Company." "Where a large entity is
involved, cases of 'without effective consent' come up frequently and often with some vexation." 
Milo v. State, 663 S.W.2d 483, 486 (Tex. App.--Beaumont 1983, no pet.). A corporation can be
the owner of property under the penal code. Penal Code, 63d Leg., R.S., ch. 399, sec. 1,
§ 1.07(a)(24), 1973 Tex. Gen. Laws 883, 888 (Tex. Penal Code Ann. § 1.07(a)(24), since
amended and renumbered as § 1.07(a)(35)). "It is obvious that a corporation cannot testify or give
direct testimony of lack of consent." Wells v. State, 608 S.W.2d 200, 202 (Tex. Crim. App.
1980); see also Freeman v. State, 707 S.W.2d 597, 605 (Tex. Crim. App. 1986). As appellant
suggests, when a corporation is the owner of property that has been stolen, it is preferable
pleading practice to allege "special" ownership in a natural person acting for the corporation. 
Simpson v. State, 648 S.W.2d 1, 2 (Tex. Crim. App. 1983); Compton v. State, 607 S.W.2d 246,
250 (Tex. Crim. App. 1979); Harris v. State, 846 S.W.2d 960, 962 (Tex. App.--Houston [1st
Dist.] 1993, pet. ref'd). While this practice is clearly desirable, naming a corporation alone as
the owner in an indictment for theft of property is permissible. Middleton v. State, 476 S.W.2d
14, 17 (Tex. Crim. App. 1972). In a prosecution for theft, circumstantial evidence that the
corporation, the alleged owner of the stolen property, did not consent to the appropriation may
be sufficient to sustain the conviction. Wells, 608 S.W.2d at 202.

 The statutory requirement (12) that the name of the owner from whom property was
unlawfully taken be alleged in the indictment or information is a rule of pleading, not a part of
the definition of the offense of theft. Freeman, 707 S.W.2d at 603. The State, having alleged
ownership in the actual owner or a special owner, has the burden of proving beyond a reasonable
doubt the ownership allegation. Id.; Roberts v. State, 513 S.W.2d 870, 872 (Tex. Crim. App.
1974); see also Wilson v. State, 808 S.W.2d 587, 589-90 (Tex. App.--Dallas 1991), pet. dism'd,
828 S.W.2d 14 (Tex. Crim. App. 1992). The same is true of the State's duty to prove lack of
consent. Wells, 608 S.W.2d at 201.

 Premier Bank, a corporation, was one of the alleged owners in count one of the
instant indictment. Bruce McLain, president and part owner of the bank, testified for the State. 
He explained that in 1988 the bank was seeking additional capitalization. McLain learned that
Rankin, one of the co-defendants whom he knew as a former bank president, had a suggestion. 
Rankin introduced McLain to appellant, who explained the annuity program, and assured McLain
that the annuities involved were fully funded. Before agreeing to appellant's proposal, McLain
conferred with attorneys, insurance consultants, and certified public accountants. He made a trip
to Houston where co-defendant Harris, president of American Teachers Life Insurance Company,
also assured him that the annuities were fully funded. McLain explained that during these
discussions he assumed that the annuities were fully funded, as represented. They were all single-premium immediate annuities required by law to be paid prior to issuance. When agreement could
not be reached on a written proposal, appellant suggested that they proceed without a formal
agreement. McLain explained that the bank's board of directors and shareholders approved the
transactions. McLain did not learn until March 30, 1989, that the annuities had not been
"booked" at American Teachers Life Insurance Company and were not assets of that company. 
McLain related that without the representations of appellant as to the funding of the annuities, he
would not have recommended that the bank get involved and the bank would not have "done the
deal."

 Viewing the evidence, direct and circumstantial, in the light most favorable to the
jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable
doubt that Premier Bank was an owner of the United States currency as alleged in the indictment
and incorporated in the court's charge. Valdez v. State, 776 S.W.2d at 165; see also Middleton,
476 S.W.2d at 17. We reject appellant's contention that McLain was incompetent to testify as to
ownership because he violated some undesignated federal banking and security laws. We find no
merit in appellant's claim that the bank suffered no loss because appellant faxed a 30-day
promissory note for $6,581,140 to the bank on March 31, 1989, signed by him as president of
General Mercantile Finance Company. The note matured and remained unpaid for a long time
before the return of the indictment.

 With regard to American Teachers Life Insurance Company, a more difficult
question is presented. Appellant argues: (1) that the evidence totally fails to show any funds from
American Teachers Life Insurance Company were stolen; (2) no special owner testified on behalf
of the insurance company; and (3) there is no evidence of deceptively induced consent as alleged. 
The State argues that appellant "conned American Teachers into issuing annuities by promising
to pay for them. He conned Premier Bank into purchasing promissory notes by telling them that
the annuities had been paid for." The State urges that:



through the testimony of Bradberry, Smith, and Jones, the evidence shows that
appellant exercised unauthorized control over the money that he received from
Premier Bank because appellant's agreement with Teachers was that he would use
the annuities in the Premier Bank transaction and the proceeds from that
transaction would be used to pay the premiums. However, appellant
misappropriated the proceeds and thereby committed theft."



 A theft conviction can never rest in whole or in part upon theft of property not
alleged in the indictment as stolen. Lehman v. State, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990);
York v. State, 721 S.W.2d 605, 607 (Tex. App.--Fort Worth 1986, pet. ref'd). The property
alleged in the indictment was "United States Currency," not annuities. Furthermore, ownership
of the property stolen must be established as of the date of the offense. Castillo v. State, 469
S.W.2d 572 (Tex. Crim. App. 1971). And proof of the owner's lack of consent as alleged is
required before a conviction for theft will be sustained. Griggs v. State, 558 S.W.2d 474 (Tex.
Crim. App. 1977). The alleged owner for the purpose of this discussion is American Teachers
Life Insurance Company.

 The State takes the position that appellant's company, General Mercantile Finance
Company, received money from Premier Bank for the promissory notes with the annuities as
collateral and placed this money in the City National Bank of Houston; that appellant withdrew
money from his company's bank account for personal use; and that appellant's actions violated
the agreement he had with the insurance company to use such money exclusively to pay the
premiums for the single premium annuities which had been illegally issued without being funded. 
There was no evidence of any written agreement. Neither appellant nor Louis Harris, a co-defendant and president of the insurance company, testified. The State relies upon the testimony
of Arthur Bradberry, Gerald Hart, and John Wayne Smith, all associated in some way with the
insurance company. These witnesses were not privy to any agreement or annuity plan. It was
a fait accompli when they learned of it. Arthur Bradberry, a member of the board of directors,
testified that he personally was told of the agreement or plan by Harris and appellant. There was
no showing of any meeting or action by the insurance company's board of directors. Bradberry
"thought" General Mercantile Finance Company was "putting up the money" to pay the annuities. 
If he knew how this was to be done, he did not testify as to any details. Gerald Hart, a data
processor who worked on an "annuity project," related that appellant briefly explained the
program to him by stating that appellant would borrow on the annuity policy, pay the premium
money to the insurance company, and through investment growth pay back the borrowed money. 
Hart assumed the borrowing would be from some third party. Hart neither sought nor sold any
annuity policies. 

 John Wayne Smith, an insurance salesman, discussed the program with Harris and
appellant in December 1988. It was his "understanding" that the annuities would be used as
collateral for a loan, that the loan money would be used to pay for the annuities, and that the
reserves of the insurance company would be strengthened. Smith, like Bradberry, engaged in the
sale of these annuities at no cost to the annuitants. Charles Kevin Jones, a friend of appellant's
son, worked at the insurance company printing forms for the annuity programs. Appellant handed
him his pay checks. Jones recalled that appellant explained the program to him, stating that the
insurance company would issue the annuities to "these people" who would sign notes to
appellant's finance company, that appellant would take the annuities to Premier Bank who would
pay the insurance company, and that the interest on the annuities would pay the interest on the
notes. None of these witnesses testified directly on the issue of the deceptively induced consent
or qualified as "special owners." The State had the burden of proof to establish beyond a
reasonable doubt that, at the time of the commission of the offense (the disbursements of money
from the bank account of General Mercantile Finance Company at City National Bank in Houston
for appellant's personal use), American Teachers Life Insurance Company not only had a
possessory interest but a greater right to the possession of the property than did the appellant. See
Freeman, 707 S.W.2d at 604.

 Viewing the evidence in the light most favorable to the jury's verdict, We conclude
that no rational trier of fact could have found beyond a reasonable doubt that American Teachers
Life Insurance Company was an owner of the stolen United States currency. The issue of
ownership was disjunctively submitted and the jury returned a general verdict. As noted, the
evidence was sufficient to support a conviction for theft from Premier Bank as alleged and
incorporated in the jury charge. When a general verdict is returned and the evidence is sufficient
to support any count of the indictment submitted, or any manner of committing the offense
submitted alternatively, no error is shown. Gonzalez v. State, 734 S.W.2d 178, 179 (Tex.
App.--Houston [1st Dist.] 1987, no pet.); see also Fuller, 827 S.W.2d at 931; Aguirre v. State,
732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (Op. on reh'g); Barrera v. State, 820 S.W.2d 194,
195 (Tex. App.--Corpus Christi 1991, pet. ref'd). Point of error fourteen is overruled.



PROOF OF "ENGAGING IN BUSINESS OF INSURANCE"


 In point of error fifteen, appellant challenges the sufficiency of the evidence to
support the allegation that he was "'engaged in the business of insurance' as required to be proved
under this indictment." Appellant and the State both agree that the phrase "engaged in the
business of insurance" was used in the instant indictment to obtain venue in Travis County. See
Tex. Ins. Code. Ann. art. 21.79B(a) (West Supp. 1994). Appellant contends, however, that the
allegation was a necessary element of the offense to be proved since it directly involved
appellant's conduct, and that the State's failure to prove this element requires an acquittal. The
State argues that the allegation was a venue fact, not an element of the offense of theft, and that
venue is not a "criminative fact" nor a constituent element of the offense. See Fairfield, 610
S.W.2d at 779.

 The application paragraph substantially tracked the language of the indictment and
the phrase "while engaging (13) in the business of insurance" was incorporated. The application
paragraph concluded: "If you do not so believe or if you have a reasonable doubt as to if
Defendant committed the offense, if any, as charged herein and defined in this charge, then you
will find the Defendant not guilty and so say by your verdict." At appellant's request, the trial
court gave the statutory definition of "Engaged in the Business of Insurance" in the abstract or
definitional portion of the court's charge. See Tex. Ins. Code Ann. art. 1.14-1, 2(a) (1-10) (West
Supp. 1994). The State did not object to the application paragraph or the abstract portion of the
charge.

 Although appellant does not specifically cite or rely thereon, our inquiry requires
examination of the Benson-Boozer line of cases holding that the sufficiency of the evidence must
be measured against the charge that was given to the jury. Boozer v. State, 717 S.W.2d 608, 610
(Tex. Crim. App. 1984); Benson v. State, 661 S.W.2d 708, 715 (Tex. Crim. App. 1982), cert.
denied, 467 U.S. 1219 (1984); see also Nickerson v. State, 782 S.W.2d 887, 891 (Tex. Crim.
App. 1990); Sheffield v. State, 847 S.W.2d 251, 259 (Tex. App.--Tyler 1992, pet. ref'd). So long
as the State does not object to the jury charge, it assumes the burden of proving the allegations
of the indictment as incorporated into the court's charge. Warren v. State, 810 S.W.2d 202, 204
(Tex. Crim. App. 1991); see also Fee v. State, 841 S.W.2d 392, 396 (Tex. Crim. App. 1992). 
There is no such thing as "surplusage" in the application paragraph of the trial court's charge. 
Fee, 841 S.W.2d at 396; Boozer, 717 S.W.2d at 612. Once a phrase has been incorporated into
the court's instructions to the jury in such a way that the jury must find it before a verdict of guilt
is authorized, it must be proved or the verdict will be considered as contrary to the law and
evidence. See Ortega v. State, 668 S.W.2d 701, 704 (Tex. App.--Texarkana 1993, pet. ref'd). 
In deciding whether the evidence was sufficient to support the conviction, we must determine
whether the State proved the allegations of the indictment as incorporated in the trial court's
charge to the jury. Warren, 810 S.W.2d at 203; Sheffield, 847 S.W.2d at 259. Therefore, we
examine the record to determine if the State proved beyond a reasonable doubt that appellant
committed the alleged offense "while engaging in the business of insurance." The proof can
consist of direct or circumstantial evidence. At the request of appellant, the trial court charged
on the definition of "Engaged in the Business of Insurance." (14) See Act of May 27, 1985, 69th
leg., R.S., ch. 918, § 1, 1985 Tex. Gen. Laws 3088, 3089 (Tex. Ins. Code Ann. art. 1.14-1,
§ 2(a) (since amended)).

 Claudia Roberts testified that appellant told her that he was in the insurance
business and mentioned American Teachers Life Insurance Company. She believed that he was
an officer of that company. Roberts called the insurance company and talked to appellant at a
telephone number he had given her. Roberts related that appellant personally explained the
annuity program to her and the life insurance policy that "went with it" and assured her that it
would be financed through a bank. Roberts was shown Single Premium Immediate Annuity No.
88-11035. She signed the applications for the annuity and the life insurance policy and the
promissory notes.

 James Clifton, who had known appellant for some years, testified that appellant
enlisted his aid with the annuity program. Clifton sold the annuity packages and received from
appellant a commission of $700 for each package sold. Clifton had other individuals work for him
soliciting the sale of the annuity packages. He related that appellant gave him a cashier's check
to pay the other solicitors their commission fees. Clifton revealed that appellant had an office at
the insurance company and that he worked with appellant there putting all the forms together "to
send up to the bank." When examiners from the State Board of Insurance were expected, he
helped to remove records from the insurance company offices for about ten days and then quit
working at the office.

 John Wayne Smith, an insurance salesman for twenty-three years, was an employee
of American Teachers Life Insurance Company. He learned about appellant's new program in
December 1988. He sold twelve annuity programs including the additional life insurance policies. 
For his efforts, he received $8,400 from appellant. Smith preferred to call the money received
documentation fees rather than commissions. Smith always gave his applications and other
paperwork to appellant or to co-defendant Harris. 

 Gerald Hart, a data processor at the insurance company testified that appellant had
a table, chairs, and a telephone in President Harris's office at the company. Appellant explained
the annuity program to Hart, and Hart saw appellant using cash value tables for a product
appellant "was fixing to market for Mr. Harris." Harris called Hart in early April 1989 and
instructed him to immediately place 131 annuity policies "on the reserves." This apparent
emergency occurred on a weekend.

 Arthur Bradberry, a vice president of American Teacher Insurance Associates, a
holding company, testified that he had shares in the insurance company and served on the board
of directors. He sold twenty six of the annuity programs and received his commission checks
from appellant's finance company, General Mercantile Finance.

 Appellant's son, Michael Don Skillern, testified that his father had been
"associated" with the insurance company for four or four and one-half years. At his father's
suggestion, the witness worked at the insurance company without pay, doing computer work for
his father. The younger Skillern set up the annuity program with the computer retrieval name of
"Bud's Life Insurance Program." "Bud" was appellant's nickname. The program had an "erase"
feature in the event of an investigation by the State Board of Insurance.

 The standard for reviewing the legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the jury's verdict and measured against the charge
given to the jury, any rational trier of fact could have found beyond a reasonable doubt the
essential elements of the offense charged. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Villalon v. State, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990); Valdez v. State, 776 S.W.2d
162, 165 (Tex. Crim. App. 1989), cert. denied, 495 U.S. 963 (1990). The standard of review
is the same in both direct and circumstantial evidence cases. Herndon v. State, 787 S.W.2d 408,
409 (Tex. Crim. App. 1990). It is not the reviewing court's duty to disregard, realign or weigh
the evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury is the
exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. 
Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Saxton v. State, 804 S.W.2d 910, 914 (Tex.
Crim. App. 1991). The jury is free to accept or reject any or all of the evidence presented by
either party. Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). Reconciliation
of evidentiary conflicts is solely a function of the trier of fact. Bowden v. State, 628 S.W.2d 782,
784 (Tex. Crim. App. 1982).

 Appellant argues that the evidence shows that he was a "premium financier" and
not that he was engaged in the insurance business. He contends that under Texas common law
and in federal bankruptcy and antitrust proceedings, companies doing business in the "premium
financing" field are completely separate and distinct from those operating in the "business of
insurance." Appellant acknowledges that Chapter 24 of the Texas Insurance Code deals with the
"financing of insurance premiums." He urges that it is a separate and distinct part of the
Insurance Code, with its clear import being that a premium finance company is not in the business
of insurance, but serves a separate consumer function. We need not further explore appellant's
contention as there is evidence that appellant's activities clearly falling within article 1.14-1(2)(a)
of the Texas Insurance Code in effect at the time. 

 Although appellant requested that article 1.14-1 be given in the court's charge, he
now challenges the constitutionality of sections 8 through 10 of that statute as being too indefinite
and vague. Appellant cannot complain about a charge which the trial court gave at his request. 
Moreover, constitutional errors may be waived. Briggs v. State, 789 S.W.2d 918, 924 (Tex.
Crim. App. 1990). Point of error fifteen is overruled.



REASONABLE HYPOTHESIS RULE


 In point of error sixteen, appellant contends that the "evidence is generally
insufficient under the appropriate appellate standard to sustain his conviction under the 'reasonable
hypothesis' rule of appellate review." Appellant relies on the rule that "a conviction based on
circumstantial evidence cannot be sustained if the circumstances do not exclude every other
reasonable hypothesis except that of guilt of the defendant." Moore v. State, 640 S.W.2d 300,
302 (Tex. Crim. App. 1982); see also Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App.
1987).

 Appellant recognizes that Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991),
has abolished the foregoing rule as an analytical construct in reviewing the sufficiency of evidence
in circumstantial evidence cases. Appellant correctly notes, however, that Geesa is not to be
applied retroactively. Id. at 164-65. Appellant was tried in June 1991, prior to the November
1991 decision in Geesa. Thus, appellant's contention must be evaluated under the pre-Geesa
rules.

 Appellant urges that the State relied upon circumstantial evidence to prove his
"alleged intent to appropriate and deprive" and that the pre-Geesa rule quoted in Moore is
applicable even if the other elements of the offense rests upon direct evidence. Intent can be
inferred from acts, words and conduct of the accused. Dues v. State, 634 S.W.2d 304, 306 (Tex.
Crim. App. 1985); Romo v. State, 593 S.W.2d 690, 693 (Tex. Crim. App. 1980); Martinez v.
State, 844 S.W.2d 279, 283 (Tex. App.--San Antonio 1992, pet. ref'd). Proof of a culpable
mental state generally relies upon circumstantial evidence. Dillon v. State, 574 S.W.2d 92, 94
(Tex. Crim. App. 1978); Rodriguez v. State, 793 S.W.2d 744, 748 (Tex. App.--San Antonio 1990,
no pet.). Since mental culpability is of such a nature that it generally must be inferred from the
circumstances under which the prohibited act occurred, the trier of fact may infer intent from any
facts in evidence which tend to prove existence of such intent. Hernandez v. State, 819 S.W.2d
806, 810 (Tex. Crim. App. 1991), cert. denied, 112 S. Ct. 2944 (1992); Lookingbill v. State, 855
S.W.2d 66, 73 (Tex. App.--Corpus Christi 1993, pet. ref'd); see also Parramore v. State, 853
S.W.2d 741, 745 (Tex. App.--Corpus Christi 1992, pet. ref'd).

 For over one hundred years, Texas criminal law required that the jury receive a
cautionary charge in a circumstantial evidence case. Among other things, such a charge instructed
the jury it was to convict the defendant only if the evidence excluded to a moral certainty every
other reasonable hypothesis except the defendant's guilt. See Hankins v. State, 646 S.W.2d 191,
203 (Tex. Crim. App. 1981) (op. on reh'g) (Onion, P.J., dissenting). The rule at the time was
that in cases where intent alone was determined by circumstances, a charge on circumstantial
evidence was not required. Stearn v. State, 571 S.W.2d 177, 178 (Tex. Crim. App. 1978);
Shippy v. State, 556 S.W.2d 246, 250 (Tex. Crim. App. 1977); Schwartz v. State, 357 S.W.2d
393, 397 (Tex. Crim. App. 1962).

 In Hankins, the majority of the Court of Criminal Appeals abolished the
requirement of a circumstantial evidence charge. Id. 646 S.W.2d at 197. The court reserved for
another day the question of the proper test for the sufficiency of the evidence in a circumstantial
evidence case. In Carlsen v. State, 654 S.W.2d 444, 448 (Tex. Crim. App. 1983) (op. on reh'g)
and companion cases, the court adopted a single standard for reviewing the legal sufficiency of
the evidence in all cases, direct or circumstantial: whether, after viewing the evidence in the light
most favorable to a verdict, a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 n.12 (1979). The
Court of Criminal Appeals did not abandon the "exclusion of outstanding reasonable hypotheses"
test that had been previously applied in circumstantial evidence cases. It remained as "one
criteria" in applying the adopted standard of review in circumstantial evidence cases. Carlsen,
654 S.W.2d at 450 (McCormick, J., concurring).

 Drawing upon the foregoing background, this Court in a pre-Geesa case reached
a conclusion contrary to appellant's contention. In Moone v. State, 802 S.W.2d 101 (Tex.
App.--Austin 1990, pet. ref'd), this Court stated:



Therefore, we conclude that the "exclusion of outstanding reasonable hypothesis"
analysis should not be used to test the sufficiency of circumstances relied upon to
prove a defendant's intent. If the evidence adequately supports an inference that
the accused possessed the requisite intent, it is sufficient to sustain a guilty verdict
regardless of whether it might support another inference.



Id. at 104.

 In another pre-Geesa opinion, the Court of Criminal Appeals stated:



Because prior case law would not have required an "exclusion of outstanding
reasonable hypothesis" instruction to a jury when the only issue before it was the
accused's intent to kill, it makes no sense, and we can think of no justification for
a rule providing, that the "exclusion of outstanding reasonable hypotheses" analysis
should be extended to test the sufficiency of circumstantial evidence relied upon to
prove an accused's intent. Indeed, the judgment that the jury is called upon to
make in the case before us--intent to kill--can by its very nature only be made upon
consideration of numerous, various circumstances and at no time will such be
absolutely assured. To require an appellate court to exclude every reasonable
hypothesis concerning an accused's "intent" is simply unreasonable--who except the
accused can absolutely determine his or her intentions? Reasonable alternative
hypothesis concerning intent is almost assured to exist in any mind other than that
of the accused. See Shippy, 556 S.W.2d at 250. An appellate court can assume
nothing more than one intends the natural consequences of his acts but the court
can never be absolutely sure of such. Consequently, serious application of the
alternative hypothesis analysis to test the mens rea of the defendant would therefore
lead to appellate reversal and acquittal in all but the rarest of cases. We cannot
sanction such when it is clear that neither the Texas Constitution nor the United
States Constitution requires us to do so. See Jackson v. Virginia, 443 U.S. at 326,
99 S. Ct. at 2793; Holland v. United States, 348 U.S. at 140, 75 S. Ct. at 137.



Matson v. State, 819 S.W.2d 839, 845-46 (Tex. Crim. App. 1991); see also Bass v. State, 830
S.W.2d 142, 146 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd).

 Therefore, even in a pre-Geesa setting, appellant's contention is without merit. 
Appellant has advanced in argument several "reasonable hypotheses (of innocence)." Our
examination thereof shows that even if the rule urged by appellant was applicable, the hypotheses
asserted are not reasonable ones. Point of error sixteen is overruled.



ENHANCEMENT CHALLENGE


 In a supplemental brief, appellant attempts to belatedly raise an additional point of
error after oral argument. Appellant contends that the prior federal conviction alleged and used
for enhancement of punishment purposes was void as a matter of law because it was not a final
conviction as alleged. A point of error raised for the first time in an amended or supplemental
brief is not normally considered to be properly presented. Rochelle v. State, 791 S.W.2d 121,
124 (Tex. Crim. App. 1990); Salazar v. State, 773 S.W.2d 34, 40 (Tex. Crim. App. 1989);
Coleman v. State, 632 S.W.2d 616, 619 (Tex. Crim. App. 1982); Berrios-Torres v. State, 803
S.W.2d 91, 95 (Tex. App.--Austin 1990, no pet.). The rule refers to the orderly and timely
presentation of issues on direct appeal to a court of appeals. The decision to consider new matter
is left to the sound discretion of the court and the interest of justice. Riley v. State, 825 S.W.2d
699, 700 (Tex. Crim. App. 1992); Boyle v. State, 820 S.W.2d 122, 141 (Tex. Crim. App. 1991)
(op. on reh'g), cert. denied, 112 S. Ct. 1297 (1992); Rochelle, 791 S.W.2d at 126. The
additional point of error is not properly or timely presented. We shall, however, consider the
point on direct appeal, but not as a collateral attack as appellant also urges.

 The State has the burden of proof as to the allegations contained in the enhancement
paragraphs of an indictment. Ex parte Augusta, 639 S.W.2d 481, 484 (Tex. Crim. App. 1982). 
This includes the burden to show the prior conviction alleged is a final conviction. Spiers v.
State, 552 S.W.2d 851, 852 (Tex. Crim. App. 1977). In the instant case, when the enhancement
allegations were read to appellant in open court at the punishment stage of the trial, he personally
entered a plea of "true" to those allegations which inter alia, alleged the prior felony conviction
was a final conviction. At the time appellant was represented by counsel.

 A plea of "true" to enhancement allegations is different from a plea at the
guilt/innocence stage of the trial and constitutes evidence. Wilson v. State, 671 S.W.2d 524, 526
(Tex. Crim. App. 1984). A defendant, by pleading "true" to enhancement allegations, removes
the burden from the State to prove that the prior conviction was a final conviction under the law. 
Harvey v. State, 611 S.W.2d 108, 111 (Tex. Crim. App.), cert. denied, 454 U.S. 840 (1981);
Kent v. State, 879 S.W.2d 80, 83 (Tex. App.--Houston [14th Dist.] 1994, no pet.); Gibson v.
State, 875 S.W.2d 5, 7 (Tex. App.--Texarkana 1994, pet. ref'd); Thomas v. State, 849 S.W.2d
405, 406 (Tex. App.--Fort Worth 1993, no pet.). A plea of "true' constitutes sufficient proof to
support the finality of the prior conviction alleged for enhancement. Wilson, 671 S.W.2d at 526;
Martin v. State, 795 S.W.2d 289, 292 (Tex. App.--Houston [14th Dist.] 1990, no pet.). Under
such circumstances, an accused cannot be heard to complain on appeal that the evidence is
insufficient. Dinn v. State, 570 S.W.2d 910, 915 (Tex. Crim. App. 1978); Martin, 795 S.W.2d
at 292. The issue is resolved by the plea. Harvey, 611 S.W.2d at 111.

 In view of appellant's plea of "true," the State was not required to offer the
judgment of the prior conviction into evidence, although it was free to offer some or all of its
evidence concerning the enhancement allegations. Here, the State did offer the formal judgment
of the prior federal conviction into evidence. At this point, considering the plea, a prima facie
showing had been made that the prior conviction alleged for enhancement was a final conviction. 
The burden shifted to appellant to prove otherwise. Diremiggio v. State, 637 S.W.2d 926, 928
(Tex. Crim. App. 1982). Appellant did not assume this burden. He did not object to the
introduction of the judgment nor did he attempt to withdraw his plea of "true." Appellant made
no effort to advise the trial court of the matters he now seeks to raise on direct appeal.

 Ignoring his plea of true, appellant now seeks to isolate the formal judgment exhibit
and claims it alone shows that the federal probated sentence was not a final conviction for the
purposes of enhancement. The judgment exhibit reflects that appellant entered a guilty plea and
was convicted on December 9, 1983, in the United States District Court, Western District of
Texas, Austin Division, of preparing false tax returns. The judgment reflects appellant's
punishment was assessed at two years' imprisonment and a fine of $500. The judgment also
provided that the first ninety days of imprisonment were to be served in a "jail-type institution"
and thereafter the execution of the balance of the sentence of imprisonment was to be suspended
and appellant placed on probation for three years pursuant to Title 18, United States Code, section
3651. It is clear from the judgment that sentence was actually imposed and that only after a
certain period of imprisonment would the balance of the execution of the sentence be suspended.

 In Texas, when probation is granted, the trial court normally does not impose
sentence. The imposition rather than the execution of the sentence is suspended. Tex. Code
Crim. Proc. Ann. art. 42.12, §§ 1, 3(a) (West Supp. 1995). Cf. Tex. Code Crim. Proc. Ann. art.
42.12, § 6 (West Supp. 1995); Ex parte Langley, 833 S.W.2d 141 (Tex. Crim. App. 1992). In
Texas, a probated sentence is not a final conviction for enhancement purposes until probation is
revoked. Ex parte Murchison, 560 S.W.2d 654, 656 (Tex. Crim. App. 1978). The federal rule,
however, is that a suspended or probated sentence is regarded as a final conviction for the
purposes of enhancement just as any other final conviction is regarded. 18 U.S.C.A., § 3651;
Davis v. Estelle, 502 F.2d 523, 524 (5th Cir. 1974). We take judicial notice of the federal rule. 
Tex. R. Crim. Evid. 202.

 In Davis, a Texas state prisoner, serving a life sentence for the primary offense
because of (1) a prior federal conviction and (2) a prior state conviction, sought federal habeas
corpus relief. The Fifth Circuit Court of Appeals affirmed the denial of relief at least as to the
use by the State of the prior federal conviction for enhancement purposes, noting the difference
between the Texas and federal rules. Davis, 502 F.2d at 524. The applicant, as does the
appellant here, had contended that the prior federal conviction was not available for enhancement
purposes because it was a federal probated sentence. This claim was rejected. Id.; Cf. United
States v. Locke, 542 S.W.2d 800,801 (9th Cir. 1976) (holding the defendant was a convicted felon
within the purview of the federal statute prohibiting the receiving and possession of firearms by
a convicted felon where the defendant's prior conviction was based on an Idaho state probated
sentence).

 In Blume v. State, 618 S.W.2d 373, 376 (Tex. Crim. App. 1981), the court held
that a prior federal felony conviction could be used for enhancement purposes in Texas even
though the underlying federal offense would not have been a felony offense in Texas. In
Dominque v. State, 787 S.W.2d 107, 108 (Tex. App.--Houston [14th Dist.] 1990, pet. ref'd),
untimely filed), the court restated the rule for Texas probated sentences, but took note that under
Louisiana law that prior probated sentences constituted final convictions for enhancement
purposes. The Court then upheld the use of the Louisiana probated sentence by the Texas
prosecutor for enhancement purposes. In Diremiggio, 637 S.W.2d at 928, the court held that
although the Virginia method of partially suspending a sentence was alien to Texas, it would be
possible to use it as a previous final conviction if the State proved the conviction was final under
Virginia law. We conclude that the State in the instant case met its burden of showing that the
prior conviction was "final" under federal law. For all the reasons stated, the supplemental point
of error is overruled.

 We note in passing that appellant's first name is misspelled in the formal judgment. 
It is spelled "Thurman" rather than "Thermon" as alleged in the indictment and shown by the
proof. We find no suggestion of a change of name. Accordingly, the judgment is amended to
reflect appellant's name as "Thermon Maurice Skillern."

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Powers, Jones and Onion*

Affirmed

Filed: December 7, 1994

Publish


* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   This prosecution is governed by the Penal Code as it read between July 1988 and March
1989, when the alleged unlawful transactions took place. In those instances in which the
current Penal Code provision is identical to that in effect at the time of the offense, the
current code is cited for the sake of convenience.
2.   The record reflects that the finance company in Houston had a telephone in the office
of a lawyer. The telephone was serviced by a telephone answering company.
3.   The first count of the indictment alleged twenty different transactions between July 21,
1988 and March 1, 1989; these transactions being the withdrawals of money from the bank
account of General Mercantile Finance Company after money was received from Premier
Bank.
4.   Our discussion here centers on the first count of the indictment under which appellant
was convicted. The State waived and abandoned the second count.
5.   Article 13.04 provides in part: "An offense committed on the boundaries of two or
more counties, or within four hundred yards thereof, may be prosecuted and punished in any
one of such counties."
6.   Appellant was not prosecuted under article 21.79A which has since been repealed. Act
of Sept. 1, 1991, 72d Leg., R.S., ch. 565, § 11, 1991 Tex. Gen. Laws 2006.
7.   Section 2(b) of S.B. 1685 provided:


(b) The venue authorized under Article 21.79B, Insurance Code, as added by
this Act, applies only to suits for which a complaint or information is filed
or an indictment returned on or after the effective date of this Act. 
8.   There are no points of error concerning the trial court's overruling of the special
requested instructions on "mistake of fact."
9. Judge Maloney added in footnote 5 of his concurrence the following:


Determining whether a particular offense contains more than one conduct
element may in itself be problematic. Consider, for example, the case of an
aggravated sexual assault. The culpable mental state applicable to that offense
is "intentionally or knowingly." See Tex. Penal Code Ann. § 22.011(a)(1)(A)
(person commits sexual assault if he "intentionally or knowingly . . . causes the
penetration of the anus or female organ of another person by any means, without that
person's consent"). The question is which conduct element is applicable. It could
be argued that "causes the penetration" is either a result of conduct element (the
result being penetration) or a nature of conduct element (the nature being
penetration). It could further be argued that "without that person's consent" is a
circumstance surrounding the conduct or, alternatively, that it goes to the overall
nature of the defendant's conduct. The case becomes even more complicated where
an aggravated element is added. Under the Court's opinion today, these ambiguities
will need to be reconciled in the charge.


See also Saldivar, 783 S.W.2d at 266-68 involving an aggravated sexual assault.
10.   Act of May 25, 1985, 69th Leg., R.S., ch. 577, § 1, 1985 Tex. Gen. Laws 2196, 2197.
11.   These evidentiary contentions are addressed in point of error fourteen where they are
properly raised.
12.   Tex. Code Crim. Proc. Ann. art. 21.08 (West 1989).
13.   The indictment used the words "engaged" rather than "engaging."
14.   The charge given read:


 "Engaged in the Business of Insurance," is defined by Article 1.14-1 of the
Texas Insurance Code, as follows:


 Any of the following acts in this state effected by mail or otherwise is
defined to be doing an insurance business in this state. The venue of an act
committed by mail is at the point where the matter transmitted by mail is
delivered and takes effect. Unless otherwise indicated, the term insurer as used
in this Article includes all corporations, associations, partnerships and
individuals engaged as principals in the business of insurance and also includes
interinsurance exchanges, mutual benefit societies, and insurance exchanges
and syndicates as defined by rules promulgated by the State Board of
Insurance.


1. The making of or proposing to make, as an insurer, an insurance contact.


2. The making of or proposing to make, as guarantor or surety, any contract
of guaranty or suretyship as a vocation and not merely incidental to any
other legitimate business or activity of the guarantor or surety.


3. The taking or receiving of any application for insurance.


4. The receiving or collection of any premium, commission, membership fees,
assessments, dues or other consideration for any insurance or any part
thereof.


5. The issuance or delivery of contracts of insurance to residents of this state
or to persons authorized to do business in this state.


6. Directly or indirectly acting as an agent or otherwise representing or aiding
on behalf of another any person or insurer in the solicitation, negotiation,
procurement or effectuation of insurance or renewals thereof or in the
dissemination of information as to coverage or rates, or forwarding of
applications, or delivery of policies or contracts, or inspection of risks, a
fixing of rates or investigation or adjustment of claims or losses or in the
transaction of matters subsequent to effectuation of the contract and arising
out of it, or in any other manner representing or assisting a person or
insurer in the transaction of insurance with respect to subjects of insurance
resident, located or to be performed in this state. The provisions of this
subdivision shall not operate to prohibit full-time salaried employees of a
corporate insured from acting in the capacity of an insurance manager or
buyer in placing insurance in behalf of such employer.


7. Contracting to provide indemnification or expense reimbursement in this
state to persons domiciled in this state or for risks located in this state,
whether as an insurer, agent, administrator, trust funding mechanism, or
by any other method, for any type of medical expenses including, but not
limited to surgical, chiropractic, physical therapy, speech pathology,
audiology, professional mental health, dental hospital, or optometric
expenses, whether this cover is by direct payment, reimbursement, or
otherwise. This provision shall not apply to:


 (i) any program otherwise authorized by law that is established by any
political subdivision of this state or under the provision of the
Interlocal Cooperation Act (Article 4413(32c), Vernon's Texas Civil
Statutes) or by a state agency; or


 (ii) a multiple employer welfare arrangement which is fully insured as
defined in 29 U.S.C.A. Section 1144(b)(6) except that the Commission
may apply any laws that regulate the business of insurance in this state
to the extent that such laws provide (1) standard requiring the
maintenance of specified levels of contributions, which any such plan,
or any trust established under such a plan, must meet in order to be
considered under such law able to pay benefits in full when due, and
(2) provisions to enforce such standards.


8. The doing of any kind of insurance business specifically recognized as
constituting the doing of an insurance business within the meaning of the
statutes relating to insurance.


9. The doing or proposing to do any insurance business in substance equivalent
to any of the foregoing in a manner designed to evade the provisions of the
statutes.


10.  Any other transactions of business in this state by an insurer.