TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-05-00416-CR




Leslie Ray Turner, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT
NO. 5408, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


                        A jury found appellant Leslie Ray Turner guilty of capital murder in the course of
committing or attempting to commit aggravated sexual assault or burglary of a habitation. See Tex.
Pen. Code Ann. § 19.03(a)(2) (West Supp. 2005). The State did not seek the death penalty. The
district court assessed punishment at life imprisonment. In six issues on appeal, Turner contests the
legal and factual sufficiency of the evidence to sustain his conviction. We will affirm the judgment
of the district court.

BACKGROUND
                        Turner was indicted for the murder of Rhonda Jo Ward, who was found dead in her
burning mobile home. According to trial testimony, the fire was discovered between approximately
7 and 8 a.m. on the morning of June 17, 2002. Passing motorists Michael and Sheridan Cradduck
noticed smoke coming out of the roof and windows of the mobile home. They stopped, and Michael
Cradduck exited their vehicle and tried to enter the home through the front door to ascertain if
anyone was inside and needed help. Michael testified that the front door was unlocked and he was
able to open it, but was turned back by the smoke and heat. Michael then tried the back door, which
was also unlocked, and testified that he was able to go inside “four or five steps” before the smoke
and heat forced him back out.
                        Several residents of the street where Ward lived gathered near her burning trailer and
observed the fire. Cindy Bradley testified that she observed Michael Cradduck try to get in through
the front door. When he was turned back, Bradley followed him around to the back door. She
concurred with Michael’s testimony that the back door was not locked.
                        Henryetta Long recounted that she was standing next to Turner and Turner’s 
grandmother, Ireta, while they observed the fire burning. Long testified that she heard Turner say
that “somebody had tried to burn her [Ward], somebody had tried to strangle her and tried to burn
her house.” When Long was later interviewed by Texas Ranger Joey Gordon, she told Gordon that
Turner had told her “that the lady had been strangled and raped.” Long also testified to telling
Gordon that she had seen an unidentified “Spanish kid” running from the property.
                        Henryetta Long’s daughter, Mitzi, recounted that Turner came over to their residence
and asked Mitzi what was being reported on their police scanner to “see if we knew what was going
on.” Mitzi testified that she saw Turner twice that morning; the second time, he had changed his
clothes and “apparently had bathed or cleaned up.” Mitzi also testified to an incident in which
Turner had claimed that if he ever caught his wife cheating on him, “he would put one bullet
between the both of them and say that he thought he was raping her and that he was just trying to
protect her.”
                        Cody Sanderson, a fireman who also served as the department’s chaplain, responded
to the fire. He and another fireman entered the burning trailer through the back door and began
searching the back end of the trailer for anyone inside. Sanderson recounted that most of the flames
were in the front of the trailer. As the fire was brought under control, Sanderson was told that a body
had been found in the bedroom, which was located at the front of the trailer adjacent to the front
door. Sanderson entered the bedroom, discovered the body, and described it for the jury: 

The body was laying on the bed on—she was on her belly, back was in the bed; in
other words, her feet were up at the head part, her head was at the other end. She was
totally nude, and her head was wrapped up with the covers. . . . Right in the small of
her back, there was a place about this big around that was burnt through to her
backbone.
 
 
Sanderson opined that the appearance and condition of the body “indicated that there was some type
of foul play involved,” and that the burns on Ward’s back indicated “that there was something put
on her, some type of accelerant or something, and set on fire at that time.”
                        The body was later identified as that of Rhonda Jo Ward, the occupant of the trailer. 
Dr. Randall Frost, the deputy chief medical examiner with the Bexar County Medical Examiner’s
Office, performed an autopsy. He testified that he found fractures to the neck and an absence of soot
in the respiratory tract that were consistent with a strangulation death. Frost also examined Ward’s
genitalia and observed redness on the back area of the vagina that appeared to “represent some kind
of trauma to that area” that was consistent with penetration. On cross-examination, Frost admitted
that the trauma could be indicative of either sexual assault or consensual sex, but emphasized on
redirect that there was no evidence of trauma in approximately 80 percent of the sexual assault cases
he has examined.
                        Chief of Police Ray Riggs investigated the scene in the aftermath of the fire. Riggs
testified that two gasoline cans were found behind the trailer and that one of the cans was not sitting
upright. Riggs further testified that the dead bolt of the front door had been forced open. Janine
Mather, an official with the State Fire Marshal’s Office, testified that the fire was determined to be
the result of arson. Mather also testified that, in her opinion, the fire was started “to conceal the
crime of homicide.” Riggs called in Texas Ranger Joey Gordon to assist with the investigation.
                        Gordon testified that he first interviewed Henryetta Long to find out information
about the male that she had seen running from the property. Gordon investigated and determined
who this individual was, but did not find anything that would lead him to suspect that this person
was involved in the crime. Gordon went back to Long to see if she had any additional information. 
Long told Gordon about Turner’s statements that Ward had been strangled and raped. This
information “perked” Gordon’s interest, because “at the point that she said she heard this, no one
should have known this because we didn’t know. Law enforcement didn’t know it; the fire
department didn’t know it. . . . So at the time Henryetta says that Leslie Turner told her that, no one
should have known anything about a strangulation or a murder or anything about any kind of rape
or sexual activity of any kind.”
                        As the investigation continued, at Gordon’s direction, Riggs requested and obtained
a DNA saliva sample from Turner. Gordon also decided to interview Turner. Gordon testified that
Turner told him that he knew Ward was having a relationship with a man named Scotty Peel. 
Gordon investigated this, but could find no evidence to corroborate what Turner had told him and
that there was nothing connecting Peel to Ward. Gordon recounted that he began to believe that
Turner was lying to him.
                        Cassie Carrading, supervisor for the DNA lab at the Austin Police Department, tested
DNA obtained at the crime scene. Carrading examined the bedding from the mattress on which
Ward was found and “found some stains that had the appearance of semen.” Carrading tested the
bedding to confirm the presence of semen, and the testing revealed a DNA profile that matched that
of Leslie Turner and that did not match that of any other suspect in the case. Carrading also tested
a nightgown that was found near Ward’s body. Carrading testified that there were four semen stains
on the nightgown, and that testing again revealed a DNA profile consistent with that of Leslie
Turner. Carrading further testified that Turner’s DNA was found on one of the gasoline cans. On
cross-examination, Carrading admitted that DNA from an unknown person was found underneath
one of Ward’s fingernails. Carrading explained on redirect that this was not unusual because “your
hands come in contact with so many different things.” 
                        Turner’s wife Lydia testified that Turner spent the entire night before the fire in bed
with her. Turner also testified, explaining the presence of his DNA around Ward as the product of
a surreptitious sexual affair between the two that he revealed for the first time when on the stand. 
He stated that he knew Ward and had done yard work for her, and had developed a sexual
relationship with her. Turner was 31; Ward was 54. When asked if Ward had a problem with the
age difference, Turner replied, “No. It wasn’t—it wasn’t a love relationship or nothing like that. 
It was strictly on sex.” Turner testified that the last time they had sex was the day before the fire. 
Turner explained:

I was at home cooking. Lydia and them was at work. Kids were all—I was at home
getting the barbecue ready to barbecue, and she [Ward] drove by, honked her horn
and asked me if I wanted to come down. Well, I was going to let the coals turn into
coals, so I got in her vehicle and rode down to her house.


Turner went on to testify that once they arrived at Ward’s house they “performed oral sex on each
other.” When asked why he had not informed Ranger Gordon of his sexual relationship with Ward,
Turner replied, “Because this is San Saba. You don’t say nothing like that to nobody.” Turner also
denied making statements regarding how Ward died to Henryetta Long, claiming Long was lying. 
Turner said, “I’m guilty of having sex with her, and I’m guilty of lying to Joey [Gordon] about
having sex with her,” but he denied killing her.
                        Evidently rejecting Turner’s explanation, the jury convicted him of murdering Ward
during the course of committing or attempting to commit aggravated sexual assault or burglary of
a habitation. The district court assessed punishment at life imprisonment. This appeal followed. 

DISCUSSION
                        In six issues on appeal, Turner contests the legal and factual sufficiency of the
evidence to sustain his conviction. In issues one and two, he asserts that the evidence is legally and
factually insufficient to support a finding that he strangled Ward to death. In issues three and four,
he asserts that the evidence is legally and factually insufficient to establish that he committed
aggravated sexual assault. In issues five and six, he asserts that the evidence is legally and factually
insufficient to establish that he committed burglary.

Standard of review
                        When there is a challenge to the legal sufficiency of the evidence to sustain a criminal
conviction, we consider whether a rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim.
App. 2005). We review all the evidence in the light most favorable to the verdict, assume that the
trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable
inferences in a manner that supports the verdict. See Griffin v. State, 614 S.W.2d 155, 159 (Tex.
Crim. App. 1981). It is not necessary that every fact point directly and independently to the
defendant’s guilt; it is enough if the conclusion is warranted by the combined and cumulative force
of all the incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App.
1993). We consider even erroneously admitted evidence. Id. The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony. Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the
exclusive province of the jury. Id.
                        In a factual sufficiency review, we view the evidence in a neutral light and will set
aside a verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the
contrary evidence is so strong that the jury could not have found all the elements of the crime beyond
a reasonable doubt. Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is
clearly wrong and unjust if the “jury’s finding is ‘manifestly unjust,’ ‘shocks the conscience,’ or
‘clearly demonstrates bias.’” Id. (quoting Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997)). All the evidence is considered equally, including the testimony of defense witnesses and the
existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992,
no pet.). Although due deference must be accorded the fact-finder’s determinations, particularly
those concerning the weight and credibility of the evidence, the reviewing court may disagree with
the result in order to prevent a manifest injustice. Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App.
2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of
guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); see Johnson,
23 S.W.3d at 11.

Strangulation
                        In issues one and two, Turner contends that the evidence is legally and factually
insufficient that he murdered Ward. Turner does not dispute that Ward died of strangulation and not
the fire; he contends only that the evidence is insufficient to link him to the crime. We disagree. 
                        Turner’s DNA was found in the same bed where Ward’s body was found, as well as
on a gas container found at the scene. Investigators concluded that the fire was set by arson, with
the use of an accelarant, and Ward’s body was partly burned as if to cover up the crime. 
Furthermore, Henryetta Long testified that Turner claimed to know that Ward had been strangled. 
This statement, coupled with Ranger Gordon’s testimony that no one knew the cause of death at the
time Turner made the statement, would enable a rational jury to infer that Turner was the perpetrator. 
Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact
could have found beyond a reasonable doubt that Turner caused Ward’s death.
                        We reach the same conclusion when considering all of the evidence in a neutral light.
Turner denied making any statements to Long about Ward being strangled and he denied killing
Ward. Turner’s wife also provided him with an alibi, testifying that he was in bed with her all night. 
Turner also attempted to explain the presence of his DNA around the crime scene by attributing it
to an affair that he disclosed only at trial. The jury is the sole judge of the credibility of the witnesses
and the weight to be given the evidence, and may choose to believe all, some, or none of it. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); Rachal v. State, 917 S.W.2d 799,
805 (Tex. Crim. App. 1996); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.—Austin 1991, pet.
ref’d). Thus, the jury is permitted to believe or disbelieve any part of the testimony of any witness. 
Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). Reconciliation of evidentiary conflicts
is solely a function of the trier of fact. Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App.
1986); Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Perez v. State, 960 S.W.2d
84, 86 (Tex. App.—Austin 1997, no pet.) (citing Chambers v. State, 805 S.W.2d 459, 461 (Tex.
Crim. App. 1991)). We find nothing irrational about the jury’s decision to resolve the conflicts in
the evidence in favor of the State. See Cain v. State, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997)
(“A decision is not manifestly unjust because the jury resolved the manifestly conflicting views of
the evidence in favor of the State”). We overrule Turner’s first and second issues.

Aggravated sexual assault
                        In issues three and four, Turner contends that the evidence is legally and factually
insufficient to support a finding that he committed aggravated sexual assault. A person commits
aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus or
sexual organ of another person by any means without that person’s consent and if the person causes
serious bodily injury or attempts to cause the death of the victim or another person in the course of
the same criminal episode or uses or exhibits a deadly weapon in the course of the same criminal
episode. Tex. Pen. Code Ann. § 22.021(a)(1)(A)(i), (2)(A)(i) (West Supp. 2005). Turner asserts that
the evidence only established that he had consensual sex with Ward and the State presented “no
evidence of force, threats or use of a deadly weapon.”
                        Dr. Frost testified that there was redness on the back area of Ward’s vagina that
appeared to “represent some kind of trauma to that area.” While Frost did acknowledge that this
evidence might be consistent with either consensual or non-consensual sex, a rational jury could
infer from all the evidence presented that the sex was not consensual. The only evidence of
consensual sex between Turner and Ward was the defendant’s own claims, first disclosed at trial,
that he had an affair with Ward. The jury could have chosen to not believe Turner’s testimony,
especially in light of the fact that no other witness testified that Turner had a sexual or even a social
relationship with Ward. In fact, Ward’s daughter testified that she and her mother were “very close”
and that her mother had never indicated that she had been involved in any sort of romantic
relationship since moving to San Saba. Other neighbors testified that they had never seen Turner
at Ward’s trailer. Furthermore, evidence of Ward’s strangulation and forced entry into her trailer,
discussed below, also could enable a rational jury to conclude that the sex was not consensual.
                        As for Turner’s assertion that there was no evidence of force, threats, or use of a
deadly weapon, the penal code requires the State to prove only that the defendant caused serious
bodily injury to or attempted to cause the death of the victim. See Tex. Pen. Code Ann.
§ 22.021(a)(2)(A)(i). The evidence is sufficient to establish that Turner strangled Ward. Frost
testified that the strangulation caused serious bodily injury and, in fact, death to Ward.
                        Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that Turner committed aggravated
sexual assault. We reach the same conclusion considering the above evidence in a neutral light. We
overrule Turner’s third and fourth issues.

Burglary
                        In his fifth and sixth issues, Turner contends that the evidence is legally and factually
insufficient to establish that he committed the offense of burglary. A person commits the offense
of burglary if the person, without the effective consent of the owner, enters a building or habitation
and commits or attempts to commit a felony, theft, or an assault. Tex. Pen. Code Ann. § 30.02(a)(3)
(West 2003).
                        As was discussed above, there is sufficient evidence that Turner committed a felony
or assault against Ward in her trailer. Our disposition of Turner’s fifth and sixth issues turns on
whether there is sufficient evidence that Turner’s entry into Ward’s house was without her effective
consent. 
                        Ward’s daughter testified that, most of the time, her mother kept her house locked. 
Michael Cradduck testified that, when he attempted to enter Ward’s trailer as the fire burned, both
the front and back doors were unlocked. Janine Mather of the State Fire Marshal’s Office examined
the front door and testified that the “examination of the door frame revealed that the door bolt had
been broken inward prior to this fire event.”
                        Turner observes that in Mather’s preliminary report, Mather had stated that the
“exterior examination revealed no indications of forced entry into the structure prior to the event.” 
Mather dismissed this inconsistency as simply an oversight during her preliminary investigation. 
She explained that in her first report, the door “was just overlooked” because she “was concentrating
on the origin and cause of the investigation.” When Ranger Gordon notified Mather that “he wanted
to get a better look at the door,” she examined it more thoroughly and concluded that it had been
forced open. However, even discounting Mather’s testimony, Chief of Police Riggs testified that
he examined the door as part of his own investigation, and he also concluded that the dead bolt of
the front door had been forced open. 
                        Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found beyond a reasonable doubt that Turner committed the offense
of burglary. We reach the same conclusion considering the above evidence in a neutral light. We
overrule Turner’s fifth and sixth issues.

CONCLUSION
                        Having overruled Turner’s issues on appeal, we affirm the judgment of the district
court.
 
 
                                                                        Bob Pemberton, Justice
Before Chief Justice Law, Pemberton, and Waldrop
Affirmed
Filed: August 11, 2006
Do Not Publish