# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00416-CR

**Leslie Ray Turner, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT NO. 5408, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Leslie Ray Turner guilty of capital murder in the course of committing or attempting to commit aggravated sexual assault or burglary of a habitation. *See* Tex. Pen. Code Ann. § 19.03(a)(2) (West Supp. 2005). The State did not seek the death penalty. The district court assessed punishment at life imprisonment. In six issues on appeal, Turner contests the legal and factual sufficiency of the evidence to sustain his conviction. We will affirm the judgment of the district court.

## BACKGROUND

Turner was indicted for the murder of Rhonda Jo Ward, who was found dead in her burning mobile home. According to trial testimony, the fire was discovered between approximately

7 and 8 a.m. on the morning of June 17, 2002. Passing motorists Michael and Sheridan Cradduck noticed smoke coming out of the roof and windows of the mobile home. They stopped, and Michael Cradduck exited their vehicle and tried to enter the home through the front door to ascertain if anyone was inside and needed help. Michael testified that the front door was unlocked and he was able to open it, but was turned back by the smoke and heat. Michael then tried the back door, which was also unlocked, and testified that he was able to go inside "four or five steps" before the smoke and heat forced him back out.

Several residents of the street where Ward lived gathered near her burning trailer and observed the fire. Cindy Bradley testified that she observed Michael Cradduck try to get in through the front door. When he was turned back, Bradley followed him around to the back door. She concurred with Michael's testimony that the back door was not locked.

Henryetta Long recounted that she was standing next to Turner and Turner's grandmother, Ireta, while they observed the fire burning. Long testified that she heard Turner say that "somebody had tried to burn her [Ward], somebody had tried to strangle her and tried to burn her house." When Long was later interviewed by Texas Ranger Joey Gordon, she told Gordon that Turner had told her "that the lady had been strangled and raped." Long also testified to telling Gordon that she had seen an unidentified "Spanish kid" running from the property.

Henryetta Long's daughter, Mitzi, recounted that Turner came over to their residence and asked Mitzi what was being reported on their police scanner to "see if we knew what was going on." Mitzi testified that she saw Turner twice that morning; the second time, he had changed his clothes and "apparently had bathed or cleaned up." Mitzi also testified to an incident in which

2

Turner had claimed that if he ever caught his wife cheating on him, "he would put one bullet between the both of them and say that he thought he was raping her and that he was just trying to protect her."

Cody Sanderson, a fireman who also served as the department's chaplain, responded to the fire. He and another fireman entered the burning trailer through the back door and began searching the back end of the trailer for anyone inside. Sanderson recounted that most of the flames were in the front of the trailer. As the fire was brought under control, Sanderson was told that a body had been found in the bedroom, which was located at the front of the trailer adjacent to the front door. Sanderson entered the bedroom, discovered the body, and described it for the jury:

> The body was laying on the bed on—she was on her belly, back was in the bed; in other words, her feet were up at the head part, her head was at the other end. She was totally nude, and her head was wrapped up with the covers. . . . Right in the small of her back, there was a place about this big around that was burnt through to her backbone.

Sanderson opined that the appearance and condition of the body "indicated that there was some type of foul play involved," and that the burns on Ward's back indicated "that there was something put on her, some type of accelerant or something, and set on fire at that time."

The body was later identified as that of Rhonda Jo Ward, the occupant of the trailer. Dr. Randall Frost, the deputy chief medical examiner with the Bexar County Medical Examiner's Office, performed an autopsy. He testified that he found fractures to the neck and an absence of soot in the respiratory tract that were consistent with a strangulation death. Frost also examined Ward's genitalia and observed redness on the back area of the vagina that appeared to "represent some kind

3

of trauma to that area" that was consistent with penetration. On cross-examination, Frost admitted that the trauma could be indicative of either sexual assault or consensual sex, but emphasized on redirect that there was no evidence of trauma in approximately 80 percent of the sexual assault cases he has examined.

Chief of Police Ray Riggs investigated the scene in the aftermath of the fire. Riggs testified that two gasoline cans were found behind the trailer and that one of the cans was not sitting upright. Riggs further testified that the dead bolt of the front door had been forced open. Janine Mather, an official with the State Fire Marshal's Office, testified that the fire was determined to be the result of arson. Mather also testified that, in her opinion, the fire was started "to conceal the crime of homicide." Riggs called in Texas Ranger Joey Gordon to assist with the investigation.

Gordon testified that he first interviewed Henryetta Long to find out information about the male that she had seen running from the property. Gordon investigated and determined who this individual was, but did not find anything that would lead him to suspect that this person was involved in the crime. Gordon went back to Long to see if she had any additional information. Long told Gordon about Turner's statements that Ward had been strangled and raped. This information "perked" Gordon's interest, because "at the point that she said she heard this, no one should have known this because we didn't know. Law enforcement didn't know it; the fire department didn't know it. . . . So at the time Henryetta says that Leslie Turner told her that, no one should have known anything about a strangulation or a murder or anything about any kind of rape or sexual activity of any kind."

As the investigation continued, at Gordon's direction, Riggs requested and obtained a DNA saliva sample from Turner. Gordon also decided to interview Turner. Gordon testified that Turner told him that he knew Ward was having a relationship with a man named Scotty Peel. Gordon investigated this, but could find no evidence to corroborate what Turner had told him and that there was nothing connecting Peel to Ward. Gordon recounted that he began to believe that Turner was lying to him.

Cassie Carrading, supervisor for the DNA lab at the Austin Police Department, tested DNA obtained at the crime scene. Carrading examined the bedding from the mattress on which Ward was found and "found some stains that had the appearance of semen." Carrading tested the bedding to confirm the presence of semen, and the testing revealed a DNA profile that matched that of Leslie Turner and that did not match that of any other suspect in the case. Carrading also tested a nightgown that was found near Ward's body. Carrading testified that there were four semen stains on the nightgown, and that testing again revealed a DNA profile consistent with that of Leslie Turner. Carrading further testified that Turner's DNA was found on one of the gasoline cans. On cross-examination, Carrading admitted that DNA from an unknown person was found underneath one of Ward's fingernails. Carrading explained on redirect that this was not unusual because "your hands come in contact with so many different things."

Turner's wife Lydia testified that Turner spent the entire night before the fire in bed with her. Turner also testified, explaining the presence of his DNA around Ward as the product of a surreptitious sexual affair between the two that he revealed for the first time when on the stand. He stated that he knew Ward and had done yard work for her, and had developed a sexual

5

relationship with her. Turner was 31; Ward was 54. When asked if Ward had a problem with the age difference, Turner replied, "No. It wasn't—it wasn't a love relationship or nothing like that. It was strictly on sex." Turner testified that the last time they had sex was the day before the fire. Turner explained:

> I was at home cooking. Lydia and them was at work. Kids were all—I was at home getting the barbecue ready to barbecue, and she [Ward] drove by, honked her horn and asked me if I wanted to come down. Well, I was going to let the coals turn into coals, so I got in her vehicle and rode down to her house.

Turner went on to testify that once they arrived at Ward's house they "performed oral sex on each other." When asked why he had not informed Ranger Gordon of his sexual relationship with Ward, Turner replied, "Because this is San Saba. You don't say nothing like that to nobody." Turner also denied making statements regarding how Ward died to Henryetta Long, claiming Long was lying. Turner said, "I'm guilty of having sex with her, and I'm guilty of lying to Joey [Gordon] about having sex with her," but he denied killing her.

Evidently rejecting Turner's explanation, the jury convicted him of murdering Ward during the course of committing or attempting to commit aggravated sexual assault or burglary of a habitation. The district court assessed punishment at life imprisonment. This appeal followed.

## DISCUSSION

In six issues on appeal, Turner contests the legal and factual sufficiency of the evidence to sustain his conviction. In issues one and two, he asserts that the evidence is legally and factually insufficient to support a finding that he strangled Ward to death. In issues three and four,

6

he asserts that the evidence is legally and factually insufficient to establish that he committed aggravated sexual assault. In issues five and six, he asserts that the evidence is legally and factually insufficient to establish that he committed burglary.

**Standard of review**

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Id*.

In a factual sufficiency review, we view the evidence in a neutral light and will set aside a verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the contrary evidence is so strong that the jury could not have found all the elements of the crime beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is

7

clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Id*. (quoting *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). All the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); *see Johnson*, 23 S.W.3d at 11.

**Strangulation**

In issues one and two, Turner contends that the evidence is legally and factually insufficient that he murdered Ward. Turner does not dispute that Ward died of strangulation and not the fire; he contends only that the evidence is insufficient to link him to the crime. We disagree.

Turner's DNA was found in the same bed where Ward's body was found, as well as on a gas container found at the scene. Investigators concluded that the fire was set by arson, with the use of an accelarant, and Ward's body was partly burned as if to cover up the crime. Furthermore, Henryetta Long testified that Turner claimed to know that Ward had been strangled. This statement, coupled with Ranger Gordon's testimony that no one knew the cause of death at the time Turner made the statement, would enable a rational jury to infer that Turner was the perpetrator.

8

Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Turner caused Ward's death.

We reach the same conclusion when considering all of the evidence in a neutral light. Turner denied making any statements to Long about Ward being strangled and he denied killing Ward. Turner's wife also provided him with an alibi, testifying that he was in bed with her all night. Turner also attempted to explain the presence of his DNA around the crime scene by attributing it to an affair that he disclosed only at trial. The jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence, and may choose to believe all, some, or none of it. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Rachal v. State*, 917 S.W.2d 799, 805 (Tex. Crim. App. 1996); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1991, pet. ref'd). Thus, the jury is permitted to believe or disbelieve any part of the testimony of any witness. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Perez v. State*, 960 S.W.2d 84, 86 (Tex. App.—Austin 1997, no pet.) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)). We find nothing irrational about the jury's decision to resolve the conflicts in the evidence in favor of the State. *See Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997) ("A decision is not manifestly unjust because the jury resolved the manifestly conflicting views of the evidence in favor of the State"). We overrule Turner's first and second issues.

**Aggravated sexual assault**

In issues three and four, Turner contends that the evidence is legally and factually insufficient to support a finding that he committed aggravated sexual assault. A person commits

9

aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus or sexual organ of another person by any means without that person's consent and if the person causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode or uses or exhibits a deadly weapon in the course of the same criminal episode. Tex. Pen. Code Ann. § 22.021(a)(1)(A)(i), (2)(A)(i) (West Supp. 2005). Turner asserts that the evidence only established that he had consensual sex with Ward and the State presented "no evidence of force, threats or use of a deadly weapon."

Dr. Frost testified that there was redness on the back area of Ward's vagina that appeared to "represent some kind of trauma to that area." While Frost did acknowledge that this evidence might be consistent with either consensual or non-consensual sex, a rational jury could infer from all the evidence presented that the sex was not consensual. The only evidence of consensual sex between Turner and Ward was the defendant's own claims, first disclosed at trial, that he had an affair with Ward. The jury could have chosen to not believe Turner's testimony, especially in light of the fact that no other witness testified that Turner had a sexual or even a social relationship with Ward. In fact, Ward's daughter testified that she and her mother were "very close" and that her mother had never indicated that she had been involved in any sort of romantic relationship since moving to San Saba. Other neighbors testified that they had never seen Turner at Ward's trailer. Furthermore, evidence of Ward's strangulation and forced entry into her trailer, discussed below, also could enable a rational jury to conclude that the sex was not consensual.

As for Turner's assertion that there was no evidence of force, threats, or use of a deadly weapon, the penal code requires the State to prove only that the defendant caused serious bodily injury to or attempted to cause the death of the victim. *See* Tex. Pen. Code Ann.

10

§ 22.021(a)(2)(A)(i).  The evidence is sufficient to establish that Turner strangled Ward.  Frost testified that the strangulation caused serious bodily injury and, in fact, death to Ward.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Turner committed aggravated sexual assault.  We reach the same conclusion considering the above evidence in a neutral light.  We overrule Turner's third and fourth issues.

**Burglary**

In his fifth and sixth issues, Turner contends that the evidence is legally and factually insufficient to establish that he committed the offense of burglary.  A person commits the offense of burglary if the person, without the effective consent of the owner, enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.  Tex. Pen. Code Ann. § 30.02(a)(3) (West 2003).

As was discussed above, there is sufficient evidence that Turner committed a felony or assault against Ward in her trailer.  Our disposition of Turner's fifth and sixth issues turns on whether there is sufficient evidence that Turner's entry into Ward's house was without her effective consent.

Ward's daughter testified that, most of the time, her mother kept her house locked.  Michael Cradduck testified that, when he attempted to enter Ward's trailer as the fire burned, both the front and back doors were unlocked.  Janine Mather of the State Fire Marshal's Office examined the front door and testified that the "examination of the door frame revealed that the door bolt had been broken inward prior to this fire event."

11

Turner observes that in Mather's preliminary report, Mather had stated that the "exterior examination revealed no indications of forced entry into the structure prior to the event." Mather dismissed this inconsistency as simply an oversight during her preliminary investigation. She explained that in her first report, the door "was just overlooked" because she "was concentrating on the origin and cause of the investigation." When Ranger Gordon notified Mather that "he wanted to get a better look at the door," she examined it more thoroughly and concluded that it had been forced open. However, even discounting Mather's testimony, Chief of Police Riggs testified that he examined the door as part of his own investigation, and he also concluded that the dead bolt of the front door had been forced open.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Turner committed the offense of burglary. We reach the same conclusion considering the above evidence in a neutral light. We overrule Turner's fifth and sixth issues.

## CONCLUSION

Having overruled Turner's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Pemberton, and Waldrop

Affirmed

Filed: August 11, 2006

Do Not Publish